

U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

**Jul 17 - 2026**

John M. Domurad, Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

3:26-cv-1394 (BKS/ML)

## WILLIAM C HALEY JR (WH)

## V.

## ASHLEY MATYJAKOWSKI, MARK MATYJAKOWSKI, ADAM BELLO, ROBERT MOORE, BEN RONNENBERG, NICK ABELE, VITA SCHNEIDER, AND JOHN AND JANE DOE'S 1-50

## 18 U.S.C. § 1030

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT COMPLAINT

# PARTIES

## PLAINTIFFS

1. Plaintiff WH is a natural person residing in the state of New York.
2. EH is a minor child and natural person residing in the state of New York.

## DEFENDANTS

1. Defendant Ashley Lynn Matyjakowski is a natural person residing in Monroe County, New York. 28 Carter Dr. Hilton NY 14468
2. Defendant Adam J. Bello is a natural person residing in Monroe County, New York and serves as Monroe County Executive. 39 W Main st Rochester NY 14614
3. Defendant Jeff Gerace is a natural person residing in the State of New York. 80 Linden Oaks Rochester NY or 35 Windermere Dr Rochester NY
4. Defendant Mark Matyjakowski is a natural person residing in the State of New York. 7 Overland Trail West Henrietta NY 14586
5. Defendant Vita Schneider is a natural person residing in the State of New York. 152 Berkshire Dr Spencerport NY
6. Defendant Nick Abele is a natural person residing in the State of New York. 20 Mountbatten Rd Rochester NY 14623
7. Defendant Robert A. Moore is a natural person residing in the State of New York. 28 Carter Dr Hilton NY 14468
8. Defendant Ben Ronnenberg is a natural person residing in the State of New York.
9. Defendants John and Jane Does 1–50 are individuals and/or entities whose true names and identities are presently unknown to Plaintiff. These Defendants are sued in their individual and/or official capacities for actions described herein. Plaintiff will amend this Complaint to reflect their true identities when ascertained.

# JURISDICTION AND VENUE

1. Jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1030(g).

2. Venue asserted in NDNY under 28 U.S.C. § 1391(b)(3) as district where no defendant resides and no substantial events occurred, but where personal jurisdiction exists over Defendants who reside in New York State and are subject to service under Fed. R. Civ. P. 4(k)(1)(A).

3. Plaintiff files in NDNY in the interests of justice under 28 U.S.C. § 1404(a). Plaintiff alleges bias circumstances, extended procedural delays, and prior related filings in WDNY and SDNY, including Dkt. 6:25cv6361 and SDNY retaliation complaint, as described in Plaintiff's Interest of Justice section incorporated herein.

4. Plaintiff seeks consideration under 28 U.S.C. § 455(a), 28 U.S.C. § 455(b), and 28 U.S.C. § 144 for disqualification where impartiality might reasonably be questioned.

5. If Court finds venue improper, Plaintiff requests transfer under 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631 to WDNY rather than dismissal.

6. Upon information and belief; Venue is proper in NDNY under 28 U.S.C. § 1391(b)(1) and (b)(2) as Plaintiff alleges Defendant Adam Bello resides or maintains residence in Binghamton, Broome County, New York, which lies within the Northern District of New York. Plaintiff further alleges substantial events occurred in Broome County and surrounding counties within this District. All Defendants are residents of New York State and subject to personal jurisdiction in this District under Fed. R. Civ. P. 4(k)(1)(A).

# IN THE INTERESTS OF JUSTICE

## WDNY

1.Plaintiff has attempted to pursue justice in Western District of New York ever since July of 2025. After doing so, his child was unlawfully seized by the same defendants in his WDNY court case. That case remained on IFP for over 180 days before Plaintiff WH borrowed money to pay the fee after the defendants made WH and EH miss Christmas together.

## SDNY

2.Plaintiff filed a retaliation complaint in Southern District of New York against those defendants in November of 2025. Despite Plaintiff clearly stating the biased conditions in WDNY and requesting that it not be transferred back to WDNY, SDNY transferred it anyways. This case still remains on IFP to this day (May 25, 2026)

## SECOND CIRCUIT

Plaintiff WH made multiple urgent attempts to file a writ of mandamus, only to face the same relentless delays and obstructions encountered in

BOTH WDNY AND SDNY. ALTHOUGH HIS WRIT WAS OFFICIALLY STAMPED ON JANUARY 5, 2026, THE SECOND CIRCUIT HAS TAKEN NO MEANINGFUL ACTION—MERELY RETURNING PAPERWORK WITH CONTRADICTORY "DISCREPANCIES" AND DENYING HIS REQUEST TO EXPEDITE WITHOUT EXPLANATION. THE ONLY UPDATE IS THAT HIS APPEAL REMAINS STALLED, INDEFINITELY PENDING IFP STATUS—THE VERY SAME EXCUSE WDNY USED TO STONEWALL PLAINTIFF FOR SIX MONTHS. SHOCKINGLY, ALL THREE COURTS HAVE BEEN EXPLICITLY NOTIFIED THAT A CHILD IS SUFFERING AND HAS BEEN KIDNAPPED UNDER COLOR OF LAW BY THE VERY DEFENDANTS NAMED IN THE ORIGINAL 6:25CV6361 CASE. YET, ALL THREE CASES REMAIN MIRED IN PROCEDURAL LIMBO, WITH EVIDENCE SUGGESTING PARALLEL DOCKETS AND THE CHILLING POSSIBILITY THAT PLAINTIFF'S CASES ARE BEING SYSTEMATICALLY SWEPT UNDER THE RUG.

4. THE POSSIBILITY OF DEFENDANT **JEFF GERACE** BEING RELATED TO LONG TIME CHIEF JUDGE **FRANK GERACI**, IS VERY BIG CONCERN AS WELL.

## IMPERSONATION

5. WDNY'S JUDGE ELIZABETH A. WOLFORD DISMISSED ALL OF WH'S TRO'S AND HIS CHANGE OF VENUE REQUEST IN ONE SHOT IN FEBRUARY 2026. THIS MADE IT SEEM AS THOUGH SHE WAS WAS UNAWARE OF THE CASE UNTIL WAY LATER AND WAS PROTECTING HER INSTITUTION OR SHE WAS BEING IMPERSONATED.
IT IS POSSIBLE THAT SHE WAS AWARE ALL ALONG AND WAS IGNORING THE TRO'S BECAUSE WH WAS SUING A MONROE COUNTY FAMILY COURT JUDGE OR BECAUSE HER COLLEAGUE'S RELATIVE WAS A DEFENDANT.

6. WITH THE HACKING AND IT RELATED ATTACKS THAT THE DEFENDANTS IN THIS COMPLAINT HAVE USED, IT IS BELIEVED THAT WH'S 6361 WDNY CASE HAS BEEN IMPERSONATED OR DELIBERATELY MANIPULATED BY ALL PARTIES INCLUDING THE JUDGE WHO ALL PLANNED TO MAKE THE CASE GET DISMISSED TO AVOID BEING HELD LIABLE FOR THE DAMAGES UNDER DISTRICT COURT WATCH.

7. INTERCEPTION OF WHS MAIL TO PLACES OUTSIDE OF NEW YORK HAS OCCURRED FREQUENTLY. WH ALLEGES THAT JOHN AND JANE DOES 1-50 HAVE ILLEGALLY ACCESSED WHS MAIL AND THEN SENT WH IMPERSONATED LETTERS OF THE INTENDED RECIPIENT TO MAKE WH THINK HE HAD TO FILE IN THE STATE OF NEW YORK.

8. WH ALLEGES THAT THIS IMPERSONATION HAS OCCURRED BY WH'S ATTEMPTS TO FILE IN THE DISTRICT OF **DELAWARE, TEXAS, WASHINGTON DC, KANSAS AND POSSIBLY NOW RHODE ISLAND.**

9. THE ONE IN **DC**, CAME BACK FROM BANKRUPTCY COURT. WH BELIEVES THIS WAS A DELIBERATE ACT TO GET WH TO THINK HE FILED IN THE WRONG DEPARTMENT.

10. TEXAS OPENLY STATED THEY WOULD TRANSFER HIS CASE BACK TO WDNY, SO WH DIDN'T EVEN PURSUE FURTHER ACTION.

11. **KANSAS** RESPONDED WITH TWO DIFFERENT EMAILS. THIS ALSO HAPPENED WITH **SDNY**. THIS APPEARS TO BE A MAN IN THE MIDDLE ATTACK. ONE EMAIL IS LEGITIMATE AND THE OTHER IS THE IMPERSONATOR.

12. THE DISTRICT OF **DELAWARE'S** JUDGE RESPONDED IMMEDIATELY BY DOCKETING WH'S CASE AND APPROVING THE IFP SHORTLY THEREAFTER.

13. Days after the **Delaware** judge's first response, WH received a letter from a magistrate judge claiming to be the one overseeing the case and was almost a spitting image of what the real judge said days before.

14. The real Judge approving the IFP afterwards solidified WH's skepticism. Soon after that two separate letters came in the mail from both the real judge and the magistrate judge dismissing WH's case.

15. **Kansas** was also very responsive and supporting at first. Kansas also flipped the script entirely shortly after.

16. WH alleges defendants John and Jane Does 1-50 ( who are affiliated to other defendants) impersonated the other courts while blocking all communications or they contacted the other districts and persuaded them to dismiss the cases.


**5 COURTS IN MONROE CHOOSING THEIR COLLEAGUES REPUTATIONS OVER THE WELL BEING OF AN INNOCENT CHILD**

17. Plaintiff's custody hearings were repeatedly adjourned for over six months while **Monroe County Family Court** judges aggressively targeted WH, having a free for all in an open fire styled attack on WH who was fighting for his child that they took unlawfully.

18. WH DID NOT RETREAT. HE CONTINUED TO WALK TOWARDS THE ATTACKS BECAUSE BEHIND THOSE ATTACKS WAS WHERE EH WAS.

19. The **Monroe County Sheriff's Office** assisted the new order of protection that had perjurious statements in them by executing another false arrest and sent the matter to **Hilton Parma town court** which was the wrong jurisdiction.

20. The **Hilton Parma Court**, and the family court in **Monroe county** manipulated and extended orders of protection in order to maintain jurisdiction over the case.

21. The **Appellate Division, Fourth Department**, also acted in concert with the lower courts by disregarding WH's appeals and exploiting minor technical discrepancies to deny an order to show cause that requested time on Christmas for WH and EH. The court treated WH's appendix-style perfected appeal as if it were a full record appeal, and returned five copies of the appendix and six copies of the brief, while retaining the original appendix WH had submitted. Due to the prohibitive cost of producing multiple copies for each defendant and for the court, Plaintiff WH explained to the Appellate Division that he could only afford to submit five copies of a shortened version. Nevertheless, the court returned all submitted materials and demanded two additional copies of the full record, along with payment, despite having already granted WH's request for poor person relief months earlier.

22. Meanwhile WH attended adjourned order of protection hearings in the **town of Henrietta NY**, on an expired order of protection. The expired OOP came from a meritless filing that was issued in December of 2023 after WH made others aware that he had evidence of hacking and would be pursuing

FULL CUSTODY AFTER HIS CHILD AND HIM WERE MOCKED BY AN ANONYMOUS MAN WHO IS AFFILIATED TO THE DEFENDANTS. THAT MOMENT WAS FOLLOWED BY MONTHS OF MENTAL ABUSE AND NEGLECT UPON THE CHILD BY THE DEFENDANTS.

23. SUBSEQUENTLY, **THE WESTERN DISTRICT OF NEW YORK (WDNY)** RELIED ON THESE STATE COURT ACTIONS TO MISAPPLY THE **ROOKER-FELDMAN** DOCTRINE, ASSUMING WH WOULD NOT RECOGNIZE THAT ROOKER-FELDMAN DOES NOT BAR FEDERAL REVIEW WHEN GENUINE CONSTITUTIONAL VIOLATIONS ARE AT ISSUE. THIS MISUSE WAS ESPECIALLY EGREGIOUS BECAUSE THE STATE COURTS SYSTEMATICALLY BLOCKED ALL POSSIBLE LEGAL REMEDIES FOR WH TO REGAIN CUSTODY OF EH, WHO HAD BEEN UNLAWFULLY SEIZED UNDER COLOR OF LAW.

24. THESE ACTIONS REFLECT A PREMEDITATED PLAN, WITH MULTIPLE MONROE COUNTY COURTS CONSPIRING TO DEPRIVE WH AND EH OF THEIR RIGHTS.

25. PLAINTIFF ALLEGES THAT THE BUFFALO FBI, THE NEW YORK CITY FBI AND THE NEWARK FBI HAVE ALL CONNECTED TO HIS DEVICES.
PLAINTIFF ALLEGES THE BUFFALO FBI RECEIVED SOME OF THE CYBER SECURITY REPORTS REFERENCED IN THIS COMPLAINT AND DID NOTHING.
IN MARCH OF 2026, PLAINTIFF ALLEGES THE NEW YORK CITY FBI SPOKE TO HIM IN PERSON. PLAINTIFF ALLEGES HE TOLD TWO FBI AGENTS ABOUT THE HACKING, BUSINESS SABOTAGE AND ABOUT TWO UNLAWFUL SEIZURES BY THE MONROE COUNTY FAMILY COURT, BUT THEY TOO HAVE DONE NOTHING.

26. FOR THESE REASONS, THIS DISTRICT COURT MUST RETAIN JURISDICTION IN THE INTERESTS OF JUSTICE AS TRANSFERRING THIS CASE BACK TO ANY COURT IN NEW YORK WOULD ALMOST CERTAINLY RESULT IN FURTHER SABOTAGE, OBSTRUCTION TO JUSTICE AND CONTINUE THE ONGOING UNLAWFUL SEIZURE OF A MINOR CHILD.

**27. THIS ACTION IS LIMITED TO CLAIMS ARISING UNDER THE COMPUTER FRAUD AND ABUSE ACT. PLAINTIFF HAS OTHER CLAIMS ARISING UNDER DIFFERENT STATUTES AND LEGAL THEORIES, SOME OF WHICH INVOLVE DIFFERENT DEFENDANTS, DIFFERENT ELEMENTS OF PROOF, AND DIFFERENT REQUESTED RELIEF. THOSE CLAIMS ARE RESERVED FOR SEPARATE ACTIONS AS APPROPRIATE. PLAINTIFF DOES NOT INTEND TO DUPLICATE RECOVERY FOR THE SAME INJURY OR EVADE ANY APPLICABLE PROCEDURAL RULES.**

# FACTUAL ALLEGATIONS

## A. Introduction

1. Pattern of Corporate Notice, Failure to Investigate, and Possible Concealment

2. Plaintiff alleges that technology providers were repeatedly placed on notice of abnormal account, device, network, and

3. routing activity affecting Plaintiff's communications and litigation preparation.

4. Plaintiff's concern is not based on a single isolated technical event. Rather, Plaintiff observed a recurring pattern involving:

5. abnormal mobile-device behavior;

6. Unexplained account and network activity;

7. Frontier-associated domains and infrastructure appearing despite Plaintiff having no Frontier service relationships the time; Prior cybersecurity records reflecting Frontier-associated IP addresses connecting to or monitoring Plaintiff's systems; Aligns of possible account, device, DNS, routing, or carrier-level interference.

## B. Unexplained degradation or alteration of AI-assisted litigation support tools during active custody and appellate litigation;

1. And repeated failures by responsible companies to provide clear records, meaningful investigation results, or identification of the responsible actor.

2. Plaintiff alleges that once T-Mobile, OpenAI, ChatGpt, AI Pro, Frontier, and/or other entities were placed on notice of suspected unauthorized access or interference, each had a duty to preserve relevant records, investigate in good faith, and avoid concealment, destruction, alteration, or selective production of evidence.

3. Plaintiff further alleges that a company that receives credible notice of unauthorized access, account compromise, device compromise, routing abnormalities, or network misuse cannot simply ignore the report, refuse meaningful escalation, or allow relevant logs to disappear under ordinary retention schedules.

4. Such conduct may constitute negligence, willful blindness, spoliation, aiding and abetting, concealment, or participation in a broader scheme, depending on what discovery reveals.

# C. Plaintiff's Basis for Seeking Expedited Discovery

1. Before Plaintiff was placed on supervised visitation, Plaintiff consulted an online legal service regarding third-party subpoenas.

2. Plaintiff was advised that subpoenas could be served immediately after the federal action was docketed. Plaintiff initially received draft subpoenas that omitted categories of records Plaintiff believed were material.

3. Rather than using those drafts, Plaintiff independently revised the subpoenas over approximately two months to broaden and clarify the requests before serving them.

4. Plaintiff thereafter served numerous subpoenas directed to third-party entities seeking records relevant to his claims.

5. Plaintiff alleges that he did not receive the responsive information he expected and has been unable to determine why.

6. Based on the timing of subsequent events and the absence of the requested records, Plaintiff believes further investigation is warranted into whether those subpoenas were properly processed and whether any responsive records were withheld, redirected, or otherwise became unavailable.

7. Plaintiff cannot presently determine the cause because the relevant records are controlled by third parties. Discovery is therefore necessary to determine what occurred.

# D. ◆ CFAA – Ashley Matyjakowski

(18 U.S.C. § 1030)

1. Plaintiff's repeat and reallege all preceding paragraphs as if fully set forth herein.

2. At all relevant times, Plaintiffs utilized protected computers within the meaning of 18 U.S.C. § 1030, including a Samsung Chromebook, mobile devices, and associated network-connected systems used for personal, legal, and business purposes.

3. Upon information and belief, Defendant Ashley Matyjakowski intentionally accessed, or caused access to be made, to Plaintiffs' protected computers and associated accounts without authorization or in excess of authorized access.

4. This inference is supported by specific, observable events and system anomalies, including but not limited to:

- The appearance of an unidentified device and/or account entity labeled "Octopus" within Plaintiffs' network environment and account-linked systems, including Android backup records, without Plaintiffs' knowledge or authorization;

- Real-time network activity associated with the "Octopus" device, including active communication indicators and internal routing identifiers, demonstrating contemporaneous interaction with Plaintiffs' Chromebook and connected systems;

- THE ROUTING OF A REMOTE DEVICE LOCK REQUEST, INITIATED BY PLAINTIFF AS A DIAGNOSTIC MEASURE, TO A PHONE NUMBER ASSOCIATED WITH DEFENDANT ASHLEY MATYJAKOWSKI, DESPITE NO AUTHORIZATION OR CONFIGURATION BY PLAINTIFF LINKING DEFENDANT TO THE DEVICE OR ACCOUNT ENVIRONMENT;
- THE TEMPORAL OVERLAP BETWEEN THESE EVENTS AND ONGOING DISRUPTIONS TO PLAINTIFFS' COMMUNICATIONS, BUSINESS OPERATIONS, AND ACCOUNT FUNCTIONALITY.

5. DEFENDANT HAD PRIOR ACCESS, PROXIMITY, AND FAMILIARITY WITH PLAINTIFFS' DEVICES, NETWORK CREDENTIALS, AND ACCOUNT ENVIRONMENTS DURING THE RELEVANT PERIOD, PROVIDING THE MEANS AND OPPORTUNITY TO ACCESS OR FACILITATE ACCESS TO SUCH SYSTEMS.

6. THE ABOVE CONDUCT IS CONSISTENT WITH UNAUTHORIZED ACCESS, ACCOUNT LINKAGE MANIPULATION, INTERCEPTION OF COMMUNICATIONS, OR MONITORING OF DEVICE ACTIVITY, ALL WITHIN THE SCOPE OF CONDUCT PROHIBITED BY 18 U.S.C. § 1030(A)(2) AND § 1030(A)(5).

7. AS A DIRECT AND PROXIMATE RESULT OF DEFENDANT'S ACTIONS, PLAINTIFFS SUFFERED LOSS AND DAMAGE WITHIN THE MEANING OF THE STATUTE, INCLUDING:
- DISRUPTION OF ELECTRONIC COMMUNICATIONS WITH CUSTOMERS AND BUSINESS CONTACTS;
- INTERFERENCE WITH ONLINE PLATFORMS AND LEAD-GENERATION SYSTEMS;
- LOSS OF BUSINESS OPPORTUNITIES AND REVENUE;
- TIME AND EXPENSE INCURRED INVESTIGATING, DIAGNOSING, AND ATTEMPTING TO REMEDIATE UNAUTHORIZED ACCESS;

WITH SUCH LOSSES EXCEEDING $5,000 IN VALUE WITHIN A ONE-YEAR PERIOD.

8. THE PRECISE MECHANISMS, DEVICES, ACCOUNTS, AND INFRASTRUCTURE USED TO CARRY OUT THE UNAUTHORIZED ACCESS CANNOT BE FULLY IDENTIFIED WITHOUT ACCESS TO THIRD-PARTY RECORDS, INCLUDING BUT NOT LIMITED TO GOOGLE ACCOUNT LOGS, DEVICE REGISTRATION DATA, IP ROUTING LOGS, AND TELECOMMUNICATIONS SUBSCRIBER INFORMATION.

9. ACCORDINGLY, PLAINTIFFS SEEK TARGETED DISCOVERY, INCLUDING RULE 45 SUBPOENAS, TO IDENTIFY THE SOURCE, CONTROL, AND SCOPE OF THE UNAUTHORIZED ACCESS DESCRIBED HEREIN.

10. DEFENDANT ASHLEY LYNN MATYJAKOWSKI, UPON INFORMATION AND BELIEF AND BASED ON FORENSIC ANALYSIS, UTILIZED HER ADMINISTRATIVE ACCESS TO A DEVICE UNDER HER CONTROL TO FACILITATE UNAUTHORIZED SYSTEM MODIFICATIONS, INSTALLATION OF UNAUTHORIZED APPLICATIONS, AND SURVEILLANCE OF COMMUNICATIONS AND DATA. THE PENETRATION TESTING REPORT IDENTIFIED MISUSE OF PARENTAL CONTROL PRIVILEGES TO ALTER SYSTEM CONFIGURATIONS AND ENABLE UNAUTHORIZED DATA COLLECTION, INCLUDING COMMUNICATION MONITORING AND TRANSMISSION OF SENSITIVE INFORMATION TO EXTERNAL SYSTEMS. THE SAME ANALYSIS FURTHER IDENTIFIED PHISHING-RELATED ACTIVITY LINKED TO

11. DEFENDANT, INCLUDING THE TRANSMISSION OF LINKS EXHIBITING MALICIOUS REDIRECTION BEHAVIOR AND CHARACTERISTICS CONSISTENT WITH CREDENTIAL HARVESTING AND DEVICE COMPROMISE.

12. PLAINTIFF ALLEGES THAT DEFENDANT INTENTIONALLY ACCESSED PROTECTED DEVICES WITHOUT AUTHORIZATION OR EXCEEDED AUTHORIZED ACCESS, RESULTING IN DATA EXTRACTION, SURVEILLANCE, AND SYSTEM INTERFERENCE IN VIOLATION OF 18 U.S.C. § 1030.

# E. ◆ CFAA – ADAM BELLO

1. PLAINTIFFS REPEAT AND REALLEGE ALL PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN.

2. UPON INFORMATION AND BELIEF, DEFENDANT ADAM BELLO, ACTING INDIVIDUALLY OR IN CONCERT WITH OTHERS, ACCESSED OR CAUSED ACCESS TO PLAINTIFF'S MOBILE DEVICE AND/OR ASSOCIATED DIGITAL ACCOUNTS WITHOUT AUTHORIZATION.

**IDENTITY-TOKEN CONTAMINATION, POLITICAL-DIGITAL LINKAGE, AND ENTERPRISE RETALIATION**

3. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

4. In 2025, Plaintiff activated a new phone number, 585-685-9995, and created a new Facebook profile. Upon activation, Facebook did not prompt for standard account creation, password confirmation, or recycled-number recovery.

5. Instead, Facebook auto-populated the device with a fully developed profile under the name "Gigi Ceravelo.," bypassing all security and recovery steps.

6. This type of auto-population cannot occur through ordinary number recycling. It requires either cached identity-token linkage, SIM-device mapping conflict, or external manipulation of account-association metadata. Plaintiff alleges this was the result of intentional digital interference.

7. Investigation revealed that Gigi Ceravelo is directly related to Gail Ceravelo whose family is publicly connected to Adam Bello., the Monroe County Executive.

8. Plaintiff's identity being force-linked to a member of the County Executive's political family is not a coincidence. It is alleged to be a deliberate act of digital manipulation and monitoring, especially given Plaintiff's ongoing litigation and public complaints against Monroe County and its officials.

9. Standard Facebook recycled-number behavior produces prompts such as "Is this you?" or "Recover an old account?" It does not log a user directly into a stranger's fully active profile or bypass all security steps.

10. The only plausible scenarios for this event involve: (a) corrupted or forcibly-overwritten identity tokens, (b) injected SIM credentials at the authentication layer, (c) prior device-level access mapping Plaintiff to another user, or (d) unauthorized administrative tampering with authentication metadata. Each scenario is consistent with intentional identity interference, not random technical error.

11. The C. family's connection to Adam Bello. is publicly documented. Adam Bello, as County Executive, oversees Monroe County IT infrastructure, Family Court resources, small business programs, digital security, and partnerships with law enforcement and contractors.

12. Plaintiff, between 2020 and 2024, applied for federal and local business assistance, including EIDL and PPP loans, Monroe County Small Business initiatives, Apex Accelerator programs, and Department of Defense business development channels. Despite qualifying, Plaintiff's applications repeatedly disappeared, stalled, or were denied without cause — consistent with digital or political interference.

13. Notably, Monica Langhorne, who denied Plaintiff a business loan in 2022 despite his qualifications, sent emails with a 173.* IP address in the header — an IP range Plaintiff has repeatedly documented as tied to Monroe County government routing infrastructure.

14. Plaintiff was transferred to Langhorne. after speaking with a staff member in the same building as the Public Defender's Office at 10 North Fitzhugh Street, Rochester, NY. (Another place Plaintiff had proof of accessing his network unlawfully)

15. Plaintiff personally confronted Adam Bello. regarding his ignored emails for small business assistance. Adam Bello. acknowledged Plaintiff but never responded to follow-up communications, further evidencing deliberate avoidance.

16. The sudden appearance of a Bello- Ceravelo.-family-connected identity on Plaintiff's device, after years of digital and legal retaliation, is a significant indicator of targeted monitoring by politically-connected actors.

17. Plaintiff's access logs repeatedly show 173.194.xxx.xx and related 173.* IP addresses during manipulated communications, delayed or intercepted

EMAILS, AND BUSINESS-LEAD TAMPERING. THESE IPS ARE ASSOCIATED WITH MONROE COUNTY GOVERNMENT INFRASTRUCTURE.

18. THE COMBINATION OF COUNTY-LINKED IP PATTERNS AND FORCED FACEBOOK IDENTITY LINKAGE STRONGLY IMPLICATES COORDINATED MONITORING AND DIGITAL INTERFERENCE BY INDIVIDUALS WITH ACCESS TO COUNTY RESOURCES.

19. THE IDENTITY-TOKEN CONTAMINATION OCCURRED AFTER PLAINTIFF FILED A SUPREME COURT INTERFERENCE CASE (MAY 2025), A FEDERAL CIVIL RIGHTS COMPLAINT (JULY 2025), AND REPORTED DIGITAL INTRUSIONS AND ESCALATING FAMILY COURT RETALIATION. AT THIS TIME, ORDERS OF PROTECTION WERE BEING USED AS NARRATIVE TOOLS AGAINST PLAINTIFF.

20. CONCURRENTLY, PLAINTIFF'S COMMUNICATIONS WITH COUNSEL WERE INTERCEPTED OR DROPPED, BUSINESS LEADS WERE DIVERTED OR SPOOFED, ACCOUNTS SHOWED MAN-IN-THE-MIDDLE ANOMALIES, AND COURTROOM NARRATIVES SHIFTED AGAINST PLAINTIFF.

21. FORCED IDENTITY-LINKAGE IS CONSISTENT WITH (A) MONITORING OF PLAINTIFF'S DEVICE ACTIVITY, (B) ATTEMPTS TO SHADOW OR CLONE HIS DIGITAL PRESENCE, (C) JUSTIFICATION-BUILDING FOR SURVEILLANCE, AND (D) TECHNICAL INSTABILITY ENGINEERED TO SABOTAGE PLAINTIFF'S LEGAL DEFENSE.

22. PLAINTIFF ALLEGES THAT NO ORDINARY CIVILIAN WOULD HAVE THE CAPACITY TO PERFORM IDENTITY-TOKEN CORRELATION OF THIS TYPE, AND THAT THESE ACTIONS COULD ONLY BE ACCOMPLISHED BY INDIVIDUALS WITH ACCESS TO STATE OR COUNTY-LEVEL DIGITAL INFRASTRUCTURE.

23. IDENTITY-TOKEN CONTAMINATION CONSTITUTES UNAUTHORIZED ACCESS UNDER THE COMPUTER FRAUD AND ABUSE ACT (CFAA), DIGITAL INTERFERENCE RELEVANT TO 42 U.S.C. § 1983 RETALIATION CLAIMS, OBSTRUCTION OF PLAINTIFF'S ACCESS TO COURTS, AND IS EVIDENCE OF COORDINATED ACTION INVOLVING STATE-LINKED INDIVIDUALS.

24. THE APPEARANCE OF A POLITICALLY-CONNECTED IDENTITY ON PLAINTIFF'S PHONE IS NOT CIRCUMSTANTIAL; IT IS PROBATIVE EVIDENCE OF (A) MONITORING TIED TO COUNTY ACTORS, (B) MANIPULATION OF PLAINTIFF'S DIGITAL ENVIRONMENT, (C) RETALIATORY CONDUCT LINKED TO LITIGATION, AND (D) INTENT TO SUPPRESS PLAINTIFF'S BUSINESS, COMMUNICATION, AND LEGAL ADVOCACY.

25. PLAINTIFF SEEKS FORENSIC PRESERVATION OF ALL RELEVANT DIGITAL RECORDS, PRODUCTION OF DEVICE-ACCESS LOGS, EMERGENCY INJUNCTIVE PROTECTIONS, AND FEDERAL INVESTIGATION INTO UNAUTHORIZED CONDUCT BY STATE- OR COUNTY-LINKED ACTORS.

26. PLAINTIFF EXPRESSLY ALLEGES THAT THE IDENTITY MISMATCH BETWEEN PLAINTIFF AND A RELATIVE OF THE MONROE COUNTY EXECUTIVE IS NOT A COINCIDENCE, NOT A TECHNICAL GLITCH, AND NOT A RECYCLED-NUMBER ARTIFACT. IT IS DIRECT EVIDENCE OF TARGETED IDENTITY INTERFERENCE, FORMING A DIGITAL BRIDGE BETWEEN MONROE COUNTY'S POLITICAL NETWORK, PLAINTIFF'S DEVICE, AND THE ONGOING PATTERN OF RETALIATION BY THE ENTERPRISE.

# F. ◆ CFAA – JEFF GERACE

1.PLAINTIFFS REPEAT AND REALLEGE ALL PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN.

2.UPON INFORMATION AND BELIEF, DEFENDANT JEFF GERACE, ACTING INDIVIDUALLY OR IN CONCERT WITH OTHERS, PARTICIPATED IN OR CAUSED UNAUTHORIZED INTERACTION WITH

3.PLAINTIFF'S DEVICE OR COMMUNICATIONS SYSTEMS DURING ACTIVE MESSAGING ACTIVITY.

4.SPECIFICALLY, ON OR ABOUT JULY 12 AT APPROXIMATELY 6:06 PM, PLAINTIFF TRANSMITTED AN OUTGOING MESSAGE VIA THE MESSAGES APPLICATION. AT THE SAME TIME, DEVICE NETWORK LOGS RECORDED A NON-ROUTINE EXTERNAL CONNECTION TO IP ADDRESS 141.193.213.10 UNDER THE MESSAGES APPLICATION CONTEXT. THIS CONNECTION WAS TEMPORALLY SYNCHRONIZED WITH PLAINTIFF'S COMMUNICATION ACTIVITY AND WAS NOT CONSISTENT WITH STANDARD BACKGROUND SYSTEM TRAFFIC.

5.FURTHER, THE ASSOCIATED URL TIED TO THIS ENDPOINT CONTAINED IDENTIFIERS CORRESPONDING TO A BUSINESS ASSOCIATED WITH DEFENDANT GERACE, INDICATING A

POTENTIAL LINKAGE BETWEEN THE OBSERVED NETWORK ACTIVITY AND DEFENDANT'S OPERATIONS. BECAUSE THE ENDPOINT IS ROUTED THROUGH INFRASTRUCTURE THAT OBSCURES ORIGIN ATTRIBUTION, THE PRECISE NATURE AND OWNERSHIP OF THE CONNECTION CANNOT BE DETERMINED WITHOUT PROVIDER-SIDE RECORDS.

6. THIS EVENT, TOGETHER WITH ITS TIMING AND ASSOCIATED IDENTIFIERS, SUPPORTS A REASONABLE INFERENCE OF UNAUTHORIZED ACCESS, INTERCEPTION, OR INTERFERENCE WITH PLAINTIFF'S COMMUNICATIONS, RESULTING IN DISRUPTION AND COMPROMISE OF PLAINTIFF'S DIGITAL AND BUSINESS ACTIVITIES.

## G. CFAA – MARK MATYJAKOWSKI

1. PLAINTIFFS REPEAT AND REALLEGE ALL PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN.

2. DEFENDANT MARK MATYJAKOWSKI, UPON INFORMATION AND BELIEF AND BASED ON CYBERSECURITY INVESTIGATION, IS ASSOCIATED WITH IP ADDRESSES IDENTIFIED IN FORENSIC ANALYSIS AS EXHIBITING BEHAVIOR CONSISTENT WITH PHISHING, UNAUTHORIZED TRACKING, AND POTENTIAL DATA INTERCEPTION. THE REPORT IDENTIFIED IP ADDRESSES 208.99.198.7 AND 163.240.41.73 AS LINKED TO DEFENDANT THROUGH INVESTIGATIVE CORRELATION, INCLUDING SOCIAL ENGINEERING ANALYSIS AND NETWORK INTELLIGENCE.

3. THESE IP ADDRESSES WERE FOUND TO HAVE OPEN SMTP SERVICES CAPABLE OF FACILITATING PHISHING CAMPAIGNS, UNAUTHORIZED COMMUNICATION, AND TRACKING ACTIVITY, AND DEMONSTRATED IRREGULAR RESPONSES CONSISTENT WITH ATTEMPTS TO EVADE DETECTION. ID.

4. PLAINTIFF ALLEGES THAT DEFENDANT PARTICIPATED IN OR FACILITATED UNAUTHORIZED ACCESS TO PLAINTIFF'S PROTECTED COMPUTERS BY PROVIDING OR OPERATING INFRASTRUCTURE USED IN PHISHING, TRACKING, OR DATA INTERCEPTION ACTIVITIES, RESULTING IN DAMAGE AND LOSS UNDER 18 U.S.C. § 1030.

## H. CFAA – VITA SCHNEIDER

1. PLAINTIFFS REPEAT AND REALLEGE ALL PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN.

2. DEFENDANT VITA SCHNEIDER, UPON INFORMATION AND BELIEF AND BASED ON FORENSIC ANALYSIS, TRANSMITTED A DROPBOX-BASED URL TO PLAINTIFF THAT WAS IDENTIFIED AS EXHIBITING CHARACTERISTICS CONSISTENT WITH PHISHING AND UNAUTHORIZED MONITORING ACTIVITY.

3. THE CYBERSECURITY REPORT DOCUMENTED THAT THE LINK CONTAINED MULTIPLE EMBEDDED ELEMENTS AND WAS FLAGGED BY AT LEAST ONE SECURITY VENDOR AS MALICIOUS, WITH BEHAVIORAL INDICATORS SUGGESTING THE POTENTIAL FOR CREDENTIAL HARVESTING OR COVERT TRACKING.

4. THE REPORT FURTHER IDENTIFIED CONTEXTUAL INDICATORS SUPPORTING THE INFERENCE THAT THE LINK WAS INTENDED TO MONITOR USER ACTIVITY OR COLLECT DATA WITHOUT AUTHORIZATION, INCLUDING ITS TIMING, ORIGIN, AND TECHNICAL STRUCTURE. ID.

5. PLAINTIFF ALLEGES THAT DEFENDANT VITA SCHNEIDER INTENTIONALLY CAUSED UNAUTHORIZED ACCESS TO PLAINTIFF'S DEVICE AND/OR DATA THROUGH THE TRANSMISSION OF A MALICIOUS LINK, CONSTITUTING A VIOLATION OF 18 U.S.C. § 1030.

## I. CFAA – NICK ABELE

1. PLAINTIFFS REPEAT AND REALLEGE ALL PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN.

2. DEFENDANT NICK ABELE, UPON INFORMATION AND BELIEF AND BASED ON FORENSIC ANALYSIS, TRANSMITTED A LINK EXHIBITING CHARACTERISTICS OF A TROJAN HORSE ATTACK DESIGNED TO COMPROMISE PLAINTIFF'S DEVICE AND COMMUNICATIONS. THE REPORT IDENTIFIED MULTIPLE REDIRECT BEHAVIORS, ABNORMAL NETWORK ACTIVITY, AND

CONNECTIONS TO EXTERNAL INFRASTRUCTURE COMMONLY ASSOCIATED WITH MALWARE DELIVERY, INCLUDING CLOUD-BASED SERVICES AND DNS TUNNELING PATTERNS.

3.THE ANALYSIS CONCLUDED THAT THE LINK, ALTHOUGH APPEARING BENIGN, FUNCTIONED AS A DELIVERY MECHANISM FOR MALICIOUS PAYLOADS OR MONITORING ACTIVITY, CONSISTENT WITH KNOWN TROJAN-BASED ATTACK METHODS. ID.

4.PLAINTIFF ALLEGES THAT DEFENDANT INTENTIONALLY DEPLOYED OR FACILITATED A MALICIOUS ACCESS VECTOR RESULTING IN UNAUTHORIZED ACCESS, SYSTEM COMPROMISE, AND DATA INTERCEPTION, IN VIOLATIONT OF 18 U.S.C. § 1030.

## J.◆ CFAA – ROBERT A. MOORE

1.PLAINTIFFS REPEAT AND REALLEGE ALL PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN.

2.DEFENDANT ROBERT A. MOORE, UPON INFORMATION AND BELIEF AND BASED ON A FORENSIC PENETRATION TESTING REPORT, ENGAGED IN UNAUTHORIZED ACCESS AND INTRUSION INTO PLAINTIFF'S PROTECTED COMPUTERS, SYSTEMS, AND NETWORK INFRASTRUCTURE.

3.THE FORENSIC ANALYSIS IDENTIFIED REPEATED MALICIOUS ACTIVITY ORIGINATING FROM IP ADDRESS 172.59.179.142, INCLUDING SQL INJECTION ATTEMPTS AGAINST PLAINTIFF'S WEBSITE, UNAUTHORIZED INTERCEPTION OF COMMUNICATIONS CONSISTENT WITH MAN-IN-THE-MIDDLE ATTACKS, AND THE TRANSMISSION OF SPOOFED EMAILS DESIGNED TO OBTAIN CREDENTIALS.

4.THE REPORT FURTHER DOCUMENTS EVIDENCE OF MALWARE DEPLOYMENT, CREDENTIAL HARVESTING THROUGH FRAUDULENT LOGIN INTERFACES, DNS MANIPULATION, AND UNAUTHORIZED INTERFERENCE WITH THIRD-PARTY SERVICES INCLUDING ANGI ADS, RESULTING IN DISRUPTION OF PLAINTIFF'S BUSINESS OPERATIONS AND FINANCIAL HARM.

5.PLAINTIFF ALLEGES THAT DEFENDANT, ACTING INDIVIDUALLY OR IN CONCERT WITH OTHERS, INTENTIONALLY ACCESSED PROTECTED SYSTEMS WITHOUT AUTHORIZATION OR EXCEEDED AUTHORIZED ACCESS, OBTAINED INFORMATION, AND CAUSED DAMAGE AND LOSS WITHIN THE MEANING OF 18 U.S.C. § 1030. ATTRIBUTION OF THE SPECIFIC USER OR SUBSCRIBER ASSOCIATED WITH THE IDENTIFIED IP ADDRESS REQUIRES DISCOVERY AND THIRD-PARTY SUBPOENAS.

## K.◆ CFAA – JOHN AND JANE DOES 1-50

1. UPON INFORMATION AND BELIEF, JOHN AND JANE DOE DEFENDANTS 1–50 ACCESSED AND COMPROMISED PLAINTIFF'S MOBILE DEVICE AND ASSOCIATED SYSTEMS WITHOUT AUTHORIZATION THROUGH THE USE OF MALICIOUS INFRASTRUCTURE IDENTIFIED IN A DIGITAL

2. FORENSIC ANALYSIS. SPECIFICALLY, FORENSIC FINDINGS DOCUMENTED BY NRN LABS IDENTIFIED A ROOT-LEVEL COMPROMISE INVOLVING MODIFICATION OF SYSTEM PROCESSES, PERSISTENCE MECHANISMS, AND DATA EXFILTRATION THROUGH A COMMAND-AND-CONTROL SERVER LOCATED AT IP ADDRESS 45.79.1.70 AND ASSOCIATED DOMAIN INFRASTRUCTURE. THE ANALYSIS FURTHER IDENTIFIED UNAUTHORIZED COMMUNICATIONS, SYSTEM-LEVEL 2.ACCESS, AND EXTRACTION OF SENSITIVE DATA, INCLUDING APPLICATION METADATA AND LOCATION INFORMATION. DUE TO THE USE OF ANONYMIZED HOSTING INFRASTRUCTURE AND OBFUSCATED DOMAIN REGISTRATION, THE IDENTITIES OF THE RESPONSIBLE ACTORS CANNOT BE DETERMINED WITHOUT PROVIDER-SIDE RECORDS.

3. ACCORDINGLY, PLAINTIFF ALLEGES THAT ONE OR MORE JOHN AND JANE DOE DEFENDANTS OPERATED, CONTROLLED, OR UTILIZED THIS INFRASTRUCTURE TO ACCESS PLAINTIFF'S DEVICE AND COMMUNICATIONS, RESULTING IN SIGNIFICANT DISRUPTION TO PLAINTIFF'S BUSINESS OPERATIONS, PRIVACY, AND LEGAL ACTIVITIES.

4.THE FORENSIC REPORT EXPRESSLY CONCLUDES THAT LEGAL ATTRIBUTION REQUIRES SUBPOENAS TO THE HOSTING PROVIDER AND DOMAIN REGISTRAR, MAKING LIMITED DISCOVERY NECESSARY TO IDENTIFY THE RESPONSIBLE PARTIES.

# L. ◆ Ben Ronnenberg

Plaintiff alleges Ben Ronnenberg illegally accessed Plaintiff's Google business account.

Plaintiff alleges Ben Ronnenberg and other accounts along with John and Jane Doe's, to steal leads.

Plaintiff alleges Ben Ronnenberg and John and Jane Doe's conspired together to prevent Plaintiff from ma

Plaintiff alleges Ben Ronnenberg, Ashley Matyjakowski, Mark Matyjakowski, Vita Schneider, Nick Abele, Robert A Moore, Jeff Gerace, Adam Bello, and John and Jane does accessed Plaintiff's accounts, networks and devices illegally.

Section "M" is a specific example of what Plaintiff requests now, if possible, but will also request in discovery when the time comes:

# M. September 18, 2024

A. Court-side records Plaintiff intends to seek:

From the Court or Unified Court System (UCS):
+ Remote hearing platform logs (Teams/WebEx/Zoom vendor)
+ Call-in bridge logs
+ Video access logs
+ Connection attempts and denials
+ Host/moderator actions (mute, deny entry, disable video)
+ Session start/end times
+ Participant lists
+ Clerk access logs for that case that day

Produce all logs reflecting access, denial, muting, or technical restrictions for the September 18, 2024 proceeding."

Third-party vendors
Courts don't run their own platforms anymore.

Intended subpoena:
+ Microsoft (Teams) +Zoom  + Cisco/WebEx
+ Telephony provider for the call-in line +Court IT contractor

Plaintiff requests:
+ Session metadata + IP addresses connected
+ IP addresses denied +    Timestamps +Moderator actions

Identify ownership
+ Subpoena ISPs / hosting providers for the IPs Nilafar identified
+ Requesting:
+ Subscriber records +Hosting account +Customer of record
+ Associated domains +    Time-bound logs for specific dates

Step 2: Independently subpoena court vendors
+ Get their IP access logs for the same dates

# L. CYBER SECURITY PEN TESTS AND REPORTS

1. 80 Page report.

BASED ON AN INDEPENDENT PENETRATION TESTING AND VULNERABILITY ASSESSMENT REPORT DATED SEPTEMBER 17, 2024, PREPARED BY ETHICAL HACKER MOHAMMED NILAFAR, PLAINTIFF'S DEVICES AND ACCOUNTS WERE FOUND TO BE COMPROMISED BY MULTIPLE FORMS OF UNAUTHORIZED DIGITAL INTERFERENCE. THE REPORT DOCUMENTS THE PRESENCE OF A CONFIRMED TROJAN, EVIDENCE OF SPYWARE BEHAVIOR, AND ABNORMAL DATA EXFILTRATION TO EXTERNAL IP ADDRESSES ASSOCIATED WITH TRACKING, PHISHING, AND COMMAND-AND-CONTROL ACTIVITY.

A SEPARATE IP ADDRESS INVESTIGATION AND NETWORK ANALYSIS IDENTIFIED REPEATED CONNECTIONS TO BLOCK-LISTED IP ADDRESSES, INCLUDING INFRASTRUCTURE TIED TO FRONTIER COMMUNICATIONS, WITH OPEN SMTP SERVICES, BLOCKED PROBES, AND TRAFFIC PATTERNS CONSISTENT WITH COVERT MONITORING RATHER THAN NORMAL CONSUMER ACTIVITY.

THE REPORTS FURTHER DOCUMENT PHISHING LINKS, ABNORMAL REDIRECTS, DUPLICATED NETWORK SIGNATURES, UNEXPLAINED CALL-FORWARDING ACTIVATION, AND UNAUTHORIZED BACKGROUND COMMUNICATIONS. COLLECTIVELY, THESE FINDINGS ESTABLISH THAT PLAINTIFF'S DIGITAL ENVIRONMENT WAS COMPROMISED THROUGH METHODS CONSISTENT WITH SURVEILLANCE, MANIPULATION OF COMMUNICATIONS, AND INTERFERENCE WITH BUSINESS OPERATIONS.

THESE CONCLUSIONS ARE NOT SPECULATIVE. THEY ARE GROUNDED IN INDUSTRY-STANDARD TOOLS INCLUDING NMAP, WHOIS, VIRUSTOTAL, TRAFFIC ANALYSIS, AND FORENSIC REVIEW, AND ARE SET FORTH IN FULL IN THE UNDERLYING REPORTS, WHICH PLAINTIFF SEEKS LEAVE TO SUBMIT ELECTRONICALLY.

**THIS 80-PAGE FORENSIC REPORT EXPANDS UPON A PRIOR 47-PAGE CYBERSECURITY REPORT THAT WAS PREVIOUSLY PROVIDED TO ASHLEY MATYJAKOWSKI AND THE MONROE COUNTY SHERIFF'S OFFICE.** THE EARLIER 47-PAGE FINDINGS ARE FULLY INCORPORATED WITHIN THE PRESENT 80-PAGE VERSION. SHORTLY AFTER THOSE FINDINGS WERE REPORTED, PLAINTIFF WAS ARRESTED BASED ON A TEXT MESSAGE THAT DID NOT CONSTITUTE A TECHNICAL VIOLATION OF THE EXISTING ORDER OF PROTECTION. THE MESSAGE WAS SENT IN THE CONTEXT OF PLAINTIFF ATTEMPTING TO OBTAIN ANSWERS REGARDING DIGITAL INTERFERENCE, HARASSMENT, AND SURVEILLANCE AFFECTING BOTH PLAINTIFF AND EH BY ASHLEY MATYJAKOWSKI, HER DAD, NICK ABELE AND VITA SCHNEIDER AS SUBSTANTIATED BY THE CYBERSECURITY ANALYSIS. THE EXPANDED REPORT PRESERVES AND EXTENDS THE ORIGINAL FINDINGS WITH ADDITIONAL DOCUMENTATION AND TECHNICAL CORROBORATION.

**ONE OTHER VERY INTERESTING THING THIS REPORT DID WAS ESTABLISH THE 172. IP BEING USED MALICIOUSLY.** THIS STANDS OUT BECAUSE AT THE TIME NO NAME OR SUSPECT WAS MENTIONED IN CONNECTION WITH THIS FINDING, HOWEVER MONTHS LATER TWO DIFFERENT CYBER SECURITY EXPERTS CONNECTED IT TO ROBERT MOORE. THE IP WAS VERY CLOSE TO WHAT PLAINTIFF'S IPHONE'S IP RANGE TYPICALLY SHOWED. THIS POINTS TO SPOOFING OCCURRING FOR YEARS. SEE **EXHIBIT A**

## 2.FORENSIC REPORT SUMMARY THAT CLAIMED ASHLEY MATYJAKOWSKI, NICK ABELE AND VITA SCHNEIDER TO BE PROBABLE SUSPECTS BY M.NILAFAR:

AN INDEPENDENT DIGITAL FORENSIC INVESTIGATION DOCUMENTS A COORDINATED PHISHING, MALWARE, AND CRYPTOCURRENCY LAUNDERING OPERATION LINKING INFRASTRUCTURE, DEVICE ARTIFACTS, AND BLOCKCHAIN FLOWS ACROSS MULTIPLE JURISDICTIONS. EVIDENCE INCLUDES ROMANIAN C2 IP SESSIONS (81.161.59.17), A BUFFALO-HOSTED COMMAND SERVER (8.9.95.206), COBALT STRIKE PERSISTENCE ARTIFACTS, EVILGINX2 CREDENTIAL HARVESTING, AND 23.5 BTC ROUTED THROUGH WASABI MIXING INTO KYC-VERIFIED EXCHANGE ACCOUNTS. THE REPORT DETAILS DOMAIN REGISTRATION RECORDS, SSL CERTIFICATE TIMELINES, DEVICE IDENTIFIERS, PACKET CAPTURES, AND STRUCTURED WITHDRAWALS TIED TO SPECIFIC ACCOUNTS. SIMULTANEOUSLY, TECHNICAL INDICATORS

SUGGEST POSSIBLE USE OF VPN ROUTING, TOR EXIT NODES, AND SHARED PAYLOAD DISTRIBUTION CONSISTENT WITH EXTERNAL ORCHESTRATION. THE FINDINGS ESTABLISH MULTI-LAYERED DIGITAL ATTRIBUTION, FINANCIAL TRACEABILITY, AND EVIDENTIARY PRESERVATION UNDER NIST FORENSIC STANDARDS, WHILE ACKNOWLEDGING THE COMPLEXITY OF DUAL ATTRIBUTION IN CYBER OPERATIONS. THE REPORT DETAILS ACTIVITY ON SEPTEMBER 17 AND 18, 2024. ON SEPTEMBER 18, 2024, PLAINTIFF AND ASHLEY MATYJAKOWSKI HAD THEIR FIRST CUSTODY HEARING FOR THEIR 2024-2025 CUSTODY CASE. PLAINTIFF ALLEGES THE TIMING IS NOT COINCIDENTAL. **EXHIBIT B**

### 3. NRN Labs – Digital Forensics Report)

BASED ON THE NRN LABS DIGITAL FORENSICS REPORT (MAY 21, 2025), INVESTIGATORS IDENTIFIED A TECHNICALLY ADVANCED CYBERATTACK INVOLVING ROOT-LEVEL COMPROMISE OF ANDROID DEVICES, PERSISTENT SURVEILLANCE, AND COVERT DATA EXFILTRATION. THE REPORT DOCUMENTS MALICIOUS MODIFICATION OF SYSTEM NTP SERVICES TO INJECT MALWARE, MAINTAIN PERSISTENCE, AND SECRETLY TRANSMIT SENSITIVE DATA, INCLUDING LOCATION HISTORY AND WHATSAPP METADATA, TO AN ACTIVE COMMAND-AND-CONTROL SERVER HOSTED AT IP ADDRESS 45.79.1.70 (CLOVER0.MATTNORDHOFFDNS.NET). FORENSIC LOGS, PACKET ANALYSIS, REVERSE-ENGINEERED BINARIES, AND THREAT-INTELLIGENCE CORRELATION CONFIRM DELIBERATE EXPLOITATION RATHER THAN ACCIDENTAL MISCONFIGURATION. NRN LABS CONCLUDES THAT THE ATTACK INFRASTRUCTURE REMAINS ACTIVE AND FORMALLY REQUESTS COURT-ISSUED SUBPOENAS TO COMPEL HOSTING AND DOMAIN RECORDS NECESSARY FOR LAWFUL ATTRIBUTION, PRESERVATION OF EVIDENCE, AND ESCALATION TO CRIMINAL INVESTIGATION. SEE **EXHIBIT C**

### 4. Mark Matyjakowski Assessment Report

THIS ASSESSMENT DOCUMENTS FINDINGS CONCERNING MARK MATYJAKOWSKI'S CONDUCT, COMMUNICATIONS, AND DIGITAL ACTIVITY RELEVANT TO PLAINTIFF'S SAFETY, PRIVACY, AND LEGAL PROCEEDINGS. THE REPORT IDENTIFIES PATTERNS OF INVOLVEMENT IN INFORMATION HANDLING, COORDINATION, AND ACCESS THAT RAISE CONCERNS REGARDING BOUNDARY VIOLATIONS AND IMPROPER PARTICIPATION IN MATTERS AFFECTING PLAINTIFF. THE FINDINGS ARE PRESENTED FOR CONTEXTUAL AND EVIDENTIARY PURPOSES AND SUPPORT FURTHER INQUIRY INTO COORDINATED CONDUCT IMPACTING PLAINTIFF'S RIGHTS AND SECURITY. THIS REPORT SPECIFICALLY SHOWED A PORT BEING USED FOR REMOTE MONITORING THAT IS CAPABLE OF SEEING THE VICTIM'S SCREEN. SEE **EXHIBIT D**

### 5. Dropbox Link Assessment (Vita Schneider)

THIS REPORT ANALYZES A DROPBOX URL SENT BY VITA SCHNEIDER AND DOCUMENTS INDICATORS CONSISTENT WITH PHISHING OR UNAUTHORIZED MONITORING. OF 96 SECURITY VENDORS, ONE FLAGGED THE LINK AS MALICIOUS, IDENTIFYING POTENTIAL CREDENTIAL HARVESTING OR SURVEILLANCE RISK. ALTHOUGH MOST VENDORS REPORTED THE LINK AS CLEAN, THE REPORT EXPLAINS THAT ADVANCED PHISHING TECHNIQUES MAY EVADE DETECTION. GIVEN THE LINK'S SOURCE, CONTEXT, AND TECHNICAL INDICATORS, THE REPORT CONCLUDES THE URL POSED A CREDIBLE SECURITY RISK WARRANTING LEGAL REVIEW. SEE **EXHIBIT E**

### 6. Ashley Lynn Matyjakowski Trojan & Spyware Incident Report)

BASED ON THE TROJAN AND SPYWARE INCIDENT REPORT PREPARED SEPTEMBER 17, 2024 BY INDEPENDENT PENETRATION TESTER MOHAMMED NILAFAR, FORENSIC ANALYSIS OF A SAMSUNG A03s DEVICE REVEALED CONFIRMED TROJAN AND SPYWARE ACTIVITY, SQL-INJECTION VULNERABILITIES, AND UNAUTHORIZED BACKGROUND DATA TRANSMISSIONS. THE REPORT IDENTIFIES AN UNOFFICIAL MALICIOUS APK FLAGGED BY MULTIPLE SECURITY VENDORS, EXHIBITING COMMAND-AND-CONTROL BEHAVIOR, EXCESSIVE PERMISSIONS, AND COVERT SURVEILLANCE CAPABILITIES. EVIDENCE SHOWS THE DEVICE WAS COMPROMISED THROUGH ABUSE OF PARENTAL-CONTROL ADMINISTRATOR PRIVILEGES, INCLUDING INSTALLATION OF MALICIOUS SOFTWARE AND TRANSMISSION OF A PHISHING LINK EXHIBITING MULTIPLE REDIRECTS AND SECURITY FLAGS. THE FINDINGS ESTABLISH UNAUTHORIZED

ACCESS, MISUSE OF ADMINISTRATIVE AUTHORITY, PRIVACY INVASION, AND DELIBERATE DIGITAL COMPROMISE, WITH ARTIFACTS PRESERVED FOR LEGAL REVIEW. **EXHIBIT F WILL BE ADDED VIA ECF LATER**

### 7. A PENETRATION TEST REPORT THAT CLAIMED ROBERT MOORE AS THE SUSPECT, BY M.NILAFAR:

BASED ON MULTIPLE INDEPENDENT CYBERSECURITY AND FORENSIC REPORTS, INCLUDING ROBERT MOORE PENETRATION TESTING REPORT AND ROBERT FORENSIC REPORT (2025), PLAINTIFF DOCUMENTS REPEATED UNAUTHORIZED ACCESS TO HIS BUSINESS SYSTEMS, COMMUNICATIONS, AND DIGITAL INFRASTRUCTURE. THE REPORTS IDENTIFY INTRUSION TECHNIQUES INCLUDING EMAIL SPOOFING, CREDENTIAL HARVESTING, SQL INJECTION ATTEMPTS, DNS MANIPULATION, SPYWARE DEPLOYMENT, AND TRAFFIC INTERCEPTION, TRACED TO CONSISTENT IP ACTIVITY AND TECHNICAL FINGERPRINTS. THESE INTRUSIONS COINCIDED WITH ABRUPT DISRUPTION OF PLAINTIFF'S LEAD GENERATION, CLIENT COMMUNICATIONS, AND REVENUE STREAMS. THE REPORTS ESTABLISH TECHNICAL CAUSATION, TEMPORAL LINKAGE TO CUSTODY LITIGATION, AND DELIBERATE INTERFERENCE RATHER THAN INCIDENTAL SYSTEM FAILURE. FULL REPORTS EXCEED 50 PAGES EACH AND ARE SUMMARIZED HERE FOR NOTICE AND PLEADING PURPOSES, PENDING ELECTRONIC FILING AND DISCOVERY. **FULL EXHIBIT G WILL BE ATTACHED LATER VIA ECF FILING**

### 8. INVESTIGATION INTO ROBERT MOORE AND ASSOCIATED ACTIVITIES (PREPARED JANUARY 23, 2025 BY ABOELSOUOD MAHMOUD, ETHICAL HACKER & PENETRATION TESTER) :

THE REPORT DOCUMENTS SUSPICIOUS NETWORK ACTIVITY LINKED TO IP ADDRESS 172.59.179.142, ASSOCIATED WITH ROBERT MOORE. FINDINGS INCLUDE REPEATED UNAUTHORIZED ACCESS ATTEMPTS TO NYI585.COM, OPEN SMTP CONFIGURATION ENABLING EMAIL TRACKING, DNS BLOCKLISTING WITH MISSING PTR RECORDS, WEAK SSL/TLS CONFIGURATIONS, AND INSECURE COOKIE SETTINGS.

THE REPORT FURTHER IDENTIFIES OVERLAPPING IP USAGE, ALIAS PATTERNS ("ROBERT LINDSEY," "R.M."), SHARED GEOLOCATION DATA, WORDPRESS ADMINISTRATIVE ACCESS, AND METADATA LINKING ACTIVITY TO ANGI ADS DISRUPTIONS AND LEAD MANIPULATION.

WHILE THE REPORT NOTES THE POSSIBILITY OF IP SPOOFING, IT CONCLUDES THAT THE ACTIVITY PATTERNS, INFRASTRUCTURE CONFIGURATIONS, AND COORDINATED ALIAS BEHAVIOR ARE CONSISTENT WITH DELIBERATE EXPLOITATION RATHER THAN RANDOM EXTERNAL INTERFERENCE. **EXHIBIT H WILL BE ADDED VIA ECF LATER**

### 9. ADVANCED FORENSIC PENETRATION TESTING & DIGITAL EVIDENCE REPORT – 2025 MN

BASED ON THE CYBERSECURITY REPORT TITLED ADVANCED FORENSIC PENETRATION TESTING AND DIGITAL EVIDENCE REPORT (MARCH 23, 2025), AN INDEPENDENT CERTIFIED FORENSIC EXAMINER DOCUMENTS EXTENSIVE UNAUTHORIZED CYBER ACTIVITY DIRECTED AT PLAINTIFF'S BUSINESS SYSTEMS, WEBSITE (NYI585.COM), EMAIL INFRASTRUCTURE, AND PERSONAL DEVICES. THE REPORT IDENTIFIES REPEATED INTRUSIONS TRACED TO IP ADDRESS 172.59.179.142 AND RELATED INFRASTRUCTURE, INCLUDING SQL INJECTION ATTACKS, EMAIL SPOOFING AND PHISHING, MAN-IN-THE-MIDDLE INTERCEPTION, DNS POISONING, MALWARE DEPLOYMENT, KEYLOGGING, AND CREDENTIAL HARVESTING. NETWORK LOGS, PACKET CAPTURES, SQL DUMPS, EMAIL HEADERS, AND MALWARE ARTIFACTS WERE COLLECTED USING INDUSTRY-STANDARD FORENSIC TOOLS AND PRESERVED WITH CRYPTOGRAPHIC HASHING AND CHAIN-OF-CUSTODY CONTROLS. THE REPORT FURTHER DOCUMENTS DELIBERATE SABOTAGE OF ANGI ADS THROUGH DNS MANIPULATION, FIREWALL RULE INTERFERENCE, SSL/TLS

INTERCEPTION, AND API TAMPERING, RESULTING IN LOSS OF ADVERTISING FUNCTIONALITY AND REVENUE. THE FINDINGS ESTABLISH TECHNICAL CAUSATION, DELIBERATE INTERFERENCE, AND EVIDENTIARY PRESERVATION SUITABLE FOR CRIMINAL REFERRAL AND CIVIL LITIGATION. **FULL EXHIBIT I WILL BE ADDED VIA ECF LATER**

### 10. Nick Abele – Trojan Horse & Digital Intrusion Report (M.Nilafar):

BASED ON THE CYBERSECURITY REPORT TITLED PENETRATION TESTING REPORT: TROJAN HORSE ANALYSIS OF SUSPICIOUS LINK SENT BY NICK ABELE (PREPARED SEPTEMBER 26, 2024), AN INDEPENDENT PENETRATION TESTER DOCUMENTS THAT A LINK SENT DIRECTLY BY NICK ABELE TO PLAINTIFF, DISGUISED AS A SPOTIFY TRACK, FUNCTIONED AS A TROJAN HORSE ATTACK. TECHNICAL ANALYSIS SHOWS MANIPULATED URL PARAMETERS, CONDITIONAL SERVER BEHAVIOR, AND NETWORK TRAFFIC TO NON-SPOTIFY INFRASTRUCTURE, INCLUDING AMAZON AWS, MICROSOFT, AKAMAI, AND FASTLY CDN SERVERS. THE LINK GENERATED ABNORMAL HTTP RESPONSES AND A SMALL PAYLOAD SIZE CONSISTENT WITH COVERT MALWARE DELIVERY DESIGNED TO EVADE DETECTION. SECURITY TOOL QUTTERA FLAGGED THE LINK AS SUSPICIOUS, AND FORENSIC INDICATORS CONFIRM DELIBERATE MISUSE OF TRUSTED PLATFORMS TO COMPROMISE PLAINTIFF'S DEVICE. THE REPORT CONCLUDES THE ATTACK WAS TARGETED, INTENTIONAL, AND DESIGNED TO DESTABILIZE PLAINTIFF'S DIGITAL ENVIRONMENT, INCREASING VULNERABILITY TO FURTHER INTRUSION AND DATA COMPROMISE. **EXHIBIT J WILL BE ADDED VIA ECF LATER**

## M. Necessity of Discovery to Validate the Cybersecurity Evidence

1. PLAINTIFF ALLEGES THAT AS WITH EVERYTHING THIS CRIMINAL ENTERPRISE DOES, SPOOFING AND MANIPULATION IS ALWAYS A POSSIBILITY. AS SEEN FROM THE ONLINE LAWYER IMPERSONATOR THAT SABOTAGED PLAINTIFF'S WESTERN DISTRICT OF NEW YORK COMPLAINT, THESE CYBER SECURITY PENETRATION TESTS COULD HAVE BEEN CONDUCTED IN SIMILAR WAYS. IF THIS WERE TRUE, PLAINTIFF ALLEGES THAT THE REPORTS WOULD STILL PROVIDE EVIDENCE OF ILLEGAL ACTIVITY.

2. PLAINTIFF ALLEGES THAT REPEATED RECURRENCE OF SUBSTANTIALLY IDENTICAL TECHNICAL ARTIFACTS ACROSS NUMEROUS INDEPENDENT EVENTS SUPPORTS EXPEDITED FORENSIC DISCOVERY TO DETERMINE WHETHER THOSE EVENTS SHARE COMMON OPERATIONAL CONTROL OR INFRASTRUCTURE.

3. PLAINTIFF'S CYBERSECURITY REPORTS CONSISTENTLY DEMONSTRATED ACTIVE PROCESS CREATION, BROWSER ACTIVITY, EXTERNAL NETWORK COMMUNICATIONS, REPEATED CONTACTED IP ADDRESSES, MEMORY-RESIDENT URLS, UPWORK AND FREELANCER.COM RELATED RESOURCES, ADOBE NETWORK ACTIVITY, AND RECURRING TECHNICAL ARTIFACTS ACROSS MULTIPLE ANALYSES. PLAINTIFF FURTHER ALLEGES THAT AT LEAST ONE CYBERSECURITY ANALYST REPRESENTED THAT SUBSEQUENT REPORTS HAD BEEN INSTRUMENTED TO DETECT UNAUTHORIZED ACCESS OR REVIEW. TAKEN TOGETHER, THESE FACTS REASONABLY WARRANT EXPEDITED DISCOVERY INTO WHETHER THE REPORTS WERE INTERCEPTED, ACCESSED, MODIFIED, MONITORED, OR OTHERWISE INTERACTED WITH BY UNAUTHORIZED PERSONS AFTER TRANSMISSION.

4. PLAINTIFF RESPECTFULLY SUBMITS THAT THIS DISCOVERY IS NOT MERELY RELEVANT, BUT INDISPENSABLE TO DETERMINING THE RELIABILITY, AUTHENTICITY, AND EVIDENTIARY VALUE OF THE CYBERSECURITY REPORTS UPON WHICH PORTIONS OF THIS ACTION RELY. PLAINTIFF ALLEGES THAT THE REPORTS MAY ULTIMATELY BE VALIDATED OR INVALIDATED THROUGH OBJECTIVE THIRD-PARTY RECORDS, INCLUDING SERVER LOGS, METADATA, ACCESS HISTORIES,

AUDIT RECORDS, SOURCE FILES, EMBEDDED RESOURCES, TRANSMISSION RECORDS, AND OTHER ELECTRONICALLY STORED INFORMATION UNIQUELY MAINTAINED BY THIRD PARTIES.

5.UPON INFORMATION AND BELIEF, IF THE REPORTS WERE INTENTIONALLY INSTRUMENTED TO DETECT UNAUTHORIZED VIEWING, INTERCEPTION, OR MANIPULATION, DISCOVERY MAY OBJECTIVELY ESTABLISH WHETHER THOSE MECHANISMS WERE ACTIVATED, WHEN THEY WERE ACTIVATED, FROM WHAT LOCATIONS OR ACCOUNTS THEY WERE ACTIVATED, AND WHETHER ANY REPORT WAS INTERCEPTED, ALTERED, SUBSTITUTED, OR ACCESSED AFTER DELIVERY. CONVERSELY, IF DISCOVERY ESTABLISHES THAT NO SUCH ACTIVITY OCCURRED, THAT EVIDENCE WOULD LIKEWISE CLARIFY THE RELIABILITY OF THE REPORTS.

6.PLAINTIFF FURTHER ALLEGES THAT THIS PROCESS WOULD SUBSTANTIALLY REDUCE SPECULATION CONCERNING THE REPORTS AND ALLOW THE COURT TO EVALUATE OBJECTIVE TECHNICAL EVIDENCE RATHER THAN COMPETING OPINIONS. IT WOULD ALSO ASSIST IN DETERMINING WHETHER ANY TECHNICAL ARTIFACTS RESULTED FROM ORDINARY SYSTEM ACTIVITY, AUTHORIZED DEFENSIVE MONITORING, UNAUTHORIZED ACCESS, POST-TRANSMISSION MANIPULATION, OR OTHER CAUSES. PLAINTIFF THEREFORE REQUESTS EXPEDITED DISCOVERY BEFORE RELEVANT ELECTRONICALLY STORED INFORMATION IS LOST THROUGH ROUTINE RETENTION OR DELETION PRACTICES.

# JOHN AND JANE DOES 1–50

(UNKNOWN INDIVIDUALS AND ENTITIES)
PLAINTIFF REFERS TO JOHN AND JANE DOES 1–50 AS INDIVIDUALS AND/OR ENTITIES WHOSE IDENTITIES ARE PRESENTLY UNKNOWN, WHO PARTICIPATED IN, FACILITATED, OR ARE OTHERWISE RESPONSIBLE FOR THE ACTS DESCRIBED BELOW. THEIR IDENTITIES AND SPECIFIC ROLES WILL BE DETERMINED THROUGH DISCOVERY.

## A. DISSEMINATION OF FALSE AND MISLEADING INFORMATION

JOHN AND JANE DOES 1-50 PROVIDED PLAINTIFF WITH INACCURATE AND MISLEADING INFORMATION REGARDING LEGAL PROCEDURES, INCLUDING BUT NOT LIMITED TO THE SCOPE AND AVAILABILITY OF SUBPOENA POWER AND THE AUTHORITY OF FEDERAL COURTS IN RELATION TO STATE CUSTODY DETERMINATIONS.
THIS INFORMATION WAS COMMUNICATED THROUGH ONLINE PLATFORMS, INCLUDING FREELANCER MARKETPLACES AND DIGITAL COMMUNICATION TOOLS, AS WELL AS THROUGH BROWSER-BASED AND AI-ASSISTED INTERFACES THAT APPEARED TO BE MANIPULATED OR UNRELIABLE.
AS A RESULT, PLAINTIFF WAS MISLED REGARDING HIS LEGAL RIGHTS AND AVAILABLE REMEDIES, IMPAIRING HIS ABILITY TO EFFECTIVELY PURSUE AND PROTECT HIS CLAIMS.

## B. INTERFERENCE WITH MAIL AND COMMUNICATIONS

PLAINTIFF EXPERIENCED REPEATED AND UNEXPLAINED DELAYS IN THE DELIVERY OF MAIL AND CORRESPONDENCE, INCLUDING LEGAL AND BUSINESS-RELATED COMMUNICATIONS BY JOHN AND JANE DOES 1-50.

ON MULTIPLE OCCASIONS, MAIL TOOK SIGNIFICANTLY LONGER THAN EXPECTED TO REACH ITS DESTINATION. FOLLOWING PLAINTIFF'S COMPLAINTS REGARDING THESE IRREGULARITIES, DELIVERY TIMES APPEARED TO NORMALIZE.

PLAINTIFF ALLEGES THAT SUCH DELAYS INTERFERED WITH HIS ABILITY TO CONDUCT BUSINESS OPERATIONS AND MANAGE LEGAL MATTERS IN A TIMELY MANNER.

## C. IMPERSONATION AND FRAUDULENT COMMUNICATIONS

PLAINTIFF ENCOUNTERED MULTIPLE INSTANCES IN WHICH JOHN AND JANE DOES 1-50 APPEARED TO IMPERSONATE LEGITIMATE SOURCES, INCLUDING:

- ONLINE FREELANCERS AND SERVICE PROVIDERS
- BUSINESS LEADS AND PROSPECTIVE CUSTOMERS
- VENDORS AND PLATFORM REPRESENTATIVES
- INDIVIDUALS PURPORTING TO BE AFFILIATED WITH LOCAL GOVERNMENT OR COURT SYSTEMS

IN ADDITION, PLAINTIFF OBSERVED COMMUNICATIONS THAT APPEARED TO ORIGINATE FROM MAJOR SERVICE PROVIDERS (INCLUDING TELECOMMUNICATIONS AND TECHNOLOGY COMPANIES) BUT WERE INCONSISTENT WITH STANDARD PRACTICES, RAISING CONCERNS REGARDING UNAUTHORIZED OR FRAUDULENT CONTACT.

## D. UNAUTHORIZED DIGITAL ACCESS AND SYSTEM INTERFERENCE

PLAINTIFF EXPERIENCED A SERIES OF DIGITAL SECURITY INCIDENTS, INCLUDING BUT NOT LIMITED TO:

- SUSPECTED MALWARE AND SPYWARE ACTIVITY
- DISRUPTIONS CONSISTENT WITH UNAUTHORIZED ACCESS OR INTERCEPTION OF COMMUNICATIONS
- SYSTEM ANOMALIES AFFECTING EMAIL DELIVERY, FILE TRANSFERS, AND ACCOUNT FUNCTIONALITY

THESE EVENTS WERE DOCUMENTED BY PLAINTIFF AND OCCURRED IN PROXIMITY TO KEY BUSINESS AND LEGAL ACTIVITIES, RESULTING IN DISRUPTION TO PLAINTIFF'S OPERATIONS AND ABILITY TO MANAGE DIGITAL INFORMATION.

## E. RESERVATION FOR IDENTIFICATION THROUGH DISCOVERY

PLAINTIFF DOES NOT PRESENTLY ATTRIBUTE EACH ACT DESCRIBED ABOVE TO ANY SPECIFIC DEFENDANT. PLAINTIFF ALLEGES, UPON INFORMATION AND BELIEF, THAT ONE OR MORE OF THE JOHN AND JANE DOE DEFENDANTS PARTICIPATED IN OR ARE RESPONSIBLE FOR THESE ACTIONS, AND RESERVES THE RIGHT TO AMEND THIS COMPLAINT TO IDENTIFY SUCH INDIVIDUALS AS THEIR IDENTITIES BECOME KNOWN.

## F. COUNT – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

ALL DEFENDANTS, INCLUDING JOHN AND JANE DOES 1–50, INTENTIONALLY AND IMPROPERLY INTERFERED WITH PLAINTIFF'S EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS, INCLUDING CUSTOMER LEADS, CONTRACTS, AND REVENUE-GENERATING OPPORTUNITIES.

## G. COUNT – MAIL INTERFERENCE (FEDERAL LAW)

PLAINTIFF EXPERIENCED REPEATED AND UNEXPLAINED DELAYS AND DISRUPTIONS IN MAIL DELIVERY BY JOHN AND JANE DOES 1–50, WHICH INTERFERED WITH LEGAL AND BUSINESS COMMUNICATIONS.

## H. COUNT – COMMUNICATIONS INTERFERENCE (STATE + FEDERAL HYBRID)

DEFENDANTS INTERFERED WITH PLAINTIFF'S ABILITY TO SEND, RECEIVE, AND RELY UPON COMMUNICATIONS, INCLUDING PHONE CALLS, TEXT MESSAGES, AND ELECTRONIC MAIL, IMPAIRING BOTH BUSINESS OPERATIONS AND LEGAL PARTICIPATION.

## I. COUNT – DENIAL OF ACCESS TO COURTS AND GOVERNMENT (FIRST AND FOURTEENTH AMENDMENTS, 42 U.S.C. § 1983)

PLAINTIFF ATTEMPTED TO REPORT SUSPECTED UNLAWFUL ACTIVITY TO FEDERAL AND STATE AUTHORITIES, INCLUDING THE FBI AND IRS.

DEFENDANTS, INCLUDING JOHN AND JANE DOES 1–50, ENGAGED IN CONDUCT THAT INTERFERED WITH PLAINTIFF'S ABILITY TO COMMUNICATE, DOCUMENT, AND PURSUE THOSE REPORTS, INCLUDING DISRUPTIONS TO COMMUNICATIONS, DATA ACCESS, AND TRANSMISSION OF INFORMATION.

THIS CONDUCT HAD THE EFFECT OF OBSTRUCTING PLAINTIFF'S ABILITY TO SEEK GOVERNMENTAL ASSISTANCE AND REDRESS, AND IMPAIRED PLAINTIFF'S RIGHT TO PETITION THE GOVERNMENT AND ACCESS APPROPRIATE INVESTIGATIVE CHANNELS.

## K. COUNT - DENIAL OF ACCESS TO GOVERNMENT BENEFITS. PLAINTIFF APPLIED FOR GOVERNMENT BENEFITS AND EMERGENCY ASSISTANCE, INCLUDING BUT NOT LIMITED TO EMERGENCY SERVICES AND UNEMPLOYMENT-RELATED SUPPORT.

Plaintiff had a legitimate claim of entitlement to fair processing of such applications under applicable law.

Defendants, including John and Jane Does 1–50, interfered with, altered, delayed, or prevented Plaintiff's applications from being properly processed.

In at least one instance, Plaintiff discovered that an emergency assistance application had been altered in a manner that resulted in disqualification from benefits.

Additionally, John and Jane Does 1-50 interfered with Plaintiff's ability to apply for or obtain unemployment-related assistance during a period of financial hardship by digitally interrupting emails and apps such as the New York State unemployment app. These actions deprived Plaintiff of access to government benefits without notice, explanation, or an opportunity to be heard, in violation of Plaintiff's rights under the Fourteenth Amendment.

## L. PLAINTIFF SEEKS NARROWLY TAILORED DISCOVERY including rule 45 subpoenas, directed to third-party service providers, telecommunications carriers, digital platforms, and account custodians, for the limited purpose of identifying the individuals and entities responsible for the interference described herein, including access logs, IP records, routing data, account activity, and related metadata.

## M. JOHN DOE DEFENDANTS (NETWORK-BASED INTERFERENCE)

M. Plaintiff identifies additional Defendants presently unknown, designated herein as John Doe Defendants 1–50, who engaged in unauthorized access, interference, or disruption of Plaintiff's electronic communications, business operations, and/or network infrastructure.

## N. APP ROCC AI

1. Network logs and forensic data reflect repeated interactions with external endpoints, including but not limited to IP address 141.193.213.21 (Close to the Clark peshkin IP monitoring WH m's texts with Ashley Matyjakowski) and associated domain app.rocc.ai, as well as additional cloud-hosted infrastructure operating through content delivery networks and shared hosting environments.

2. The identity of these actors is presently unknown due to the use of anonymized or multi-tenant infrastructure, including but not limited to services provided by third-party hosting providers and content delivery networks.

3.Plaintiff will seek to identify these Defendants through discovery, including subpoenas directed to hosting providers, domain registrars, and network intermediaries associated with the identified IP addresses and domains.

# O.AMAZON WEB SERVICES

1.Plaintiff brings claims against John Doe Defendants 1–50, whose identities are presently unknown, who operated, controlled, or utilized cloud-based infrastructure, including but not limited to Amazon Web Services (AWS) resources, in connection with the acts described herein.

2.Forensic data and network logs associated with Plaintiff's devices, accounts, and business systems identified repeated connections to IP addresses and infrastructure associated with AWS, including but not limited to:

- 18.0.0.0/8
- 54.0.0.0/8
- 3.0.0.0/8

3.These connections occurred during time periods directly associated with:

- disruption of Plaintiff's business operations
- interference with web-based services and communications
- redirection or suppression of inbound customer traffic

4. specific AWS accounts, users, or entities responsible for operating these resources are not publicly identifiable and are known only to Amazon Web Services.

Accordingly, Plaintiff will seek discovery, including third-party subpoenas pursuant to Federal Rule of Civil Procedure 45, to identify:

- the account holders associated with the identified IP addresses
- access logs and usage records tied to those resources
- any related subscriber or billing information

# P. FIGHT FOR Exxxx SITE

1.Plaintiff alleges that John and Jane Doe Defendants acted individually and/or in concert with other Defendants to carry out the interference and constitutional violations described herein. plaintiff further alleges, upon information and belief, that the domain reconsolutionsinc.com, and associated infrastructure, was involved in or connected to activity affecting Plaintiff's website, FightForElxxx.com.

Forensic review of Plaintiff's device logs and network activity reflects repeated contact with reconsolutionsinc.com, including

INSTANCES IN WHICH THE DOMAIN APPEARED AMONG THE MOST FREQUENTLY CONTACTED EXTERNAL DOMAINS DURING PERIODS OF ALLEGED INTERFERENCE.

2. ADDITIONAL DNS AND INFRASTRUCTURE DATA INDICATE THAT FIGHTFORELXXX.COM RESOLVED TO CLOUD-HOSTED IP ADDRESSES, INCLUDING AWS-ASSOCIATED RANGES, DURING RELEVANT TIME PERIODS. PLAINTIFF OBSERVED THAT ACTIVITY INVOLVING RECONSOLUTIONSINC.COM OCCURRED CONTEMPORANEOUSLY WITH DISRUPTIONS TO WEBSITE ACCESSIBILITY, INTERFERENCE WITH INBOUND COMMUNICATIONS, AND IRREGULARITIES AFFECTING SITE FUNCTIONALITY.

3. WHILE PLAINTIFF CANNOT PRESENTLY DETERMINE WHETHER RECONSOLUTIONSINC.COM DIRECTLY INITIATED, FACILITATED, OR WAS INCIDENTALLY INVOLVED IN THE OBSERVED ACTIVITY, THE REPEATED PRESENCE OF THIS DOMAIN IN CONNECTION WITH PLAINTIFF'S SYSTEMS AND THE TIMING OF SUCH ACTIVITY WARRANT FURTHER INVESTIGATION.

4. THE IDENTITY OF THE INDIVIDUALS OR ENTITIES RESPONSIBLE FOR OPERATING OR UTILIZING RECONSOLUTIONSINC.COM, AND THEIR RELATIONSHIP TO THE JOHN DOE DEFENDANTS DESCRIBED HEREIN, IS NOT PRESENTLY KNOWN AND IS NOT PUBLICLY ASCERTAINABLE WITHOUT DISCOVERY.

5. PLAINTIFF WILL SEEK DISCOVERY, INCLUDING THIRD-PARTY SUBPOENAS, TO DETERMINE THE OWNERSHIP, ACCESS LOGS, ROUTING BEHAVIOR, AND ANY OPERATIONAL ROLE OF RECONSOLUTIONSINC.COM IN CONNECTION WITH THE INTERFERENCE DESCRIBED HEREIN. BEGINNING IN OR AROUND 2022 AND CONTINUING THROUGH 2025, PLAINTIFF OBSERVED PERSISTENT AND ESCALATING ANOMALIES AFFECTING HIS BUSINESS COMMUNICATIONS, ACCOUNT ACCESS, AND ONLINE OPERATIONS, WHICH WERE NOT CONSISTENT WITH ORDINARY TECHNICAL MALFUNCTION AND INSTEAD SUGGEST UNAUTHORIZED ACCESS, REROUTING, OR INTERFERENCE REQUIRING FORENSIC INVESTIGATION. EXHIBIT

## Q. MITM CALL FORWARDING BUSINESS ATTACK DURING 2022 CUSTODY CASE

1. DURING 2022, PLAINTIFF EXPERIENCED REPEATED DISRUPTIONS IN BUSINESS-RELATED PHONE COMMUNICATIONS, INCLUDING IRREGULAR CALL ROUTING, PREMATURE DIVERSION TO VOICEMAIL, AND FAILURE OF INBOUND LEADS TO PROPERLY CONNECT. THESE DISRUPTIONS WERE REPORTED BY MULTIPLE THIRD PARTIES WHO INDICATED THAT CALLS TO PLAINTIFF WOULD RING BRIEFLY AND THEN DIVERT WITHOUT COMPLETION.

2. CONTEMPORANEOUS ACCOUNT OBSERVATIONS AND PUBLIC-RECORD CORRELATIONS REFLECT RECURRING ASSOCIATIONS WITH AREA CODES INCLUDING 201 (NEW JERSEY) AND 303 AND 720 (COLORADO), WHICH APPEARED IN CONNECTION WITH CALL-ROUTING BEHAVIOR, FORWARDING ACTIVITY, AND LATER IN ACCOUNT-ACCESS LOGS TIED TO PLAINTIFF'S GOOGLE AND APPLE ACCOUNTS. THESE GEOGRAPHIC INDICATORS WERE NOT CONSISTENT WITH PLAINTIFF'S KNOWN OPERATIONS OR CONTACTS AT THE TIME.

3. AFTER APPROXIMATELY ONE YEAR OF ONGOING COMMUNICATION DISRUPTION, PLAINTIFF DISCOVERED THAT A GOOGLE VOICE CONFIGURATION HAD BEEN ACTIVATED WITHIN HIS GOOGLE ACCOUNT (NYIROC585@GMAIL.COM) WITHOUT HIS INTENTIONAL SETUP OR AUTHORIZATION. THIS CONFIGURATION WAS ASSOCIATED PRIMARILY WITH BUSINESS-RELATED CONTACTS AND COINCIDED WITH THE PREVIOUSLY DESCRIBED CALL-ROUTING IRREGULARITIES. PLAINTIFF FURTHER OBSERVED VOICEMAIL BEHAVIOR, INCLUDING A **BRITISH-ACCENT** SYSTEM PROMPT, CONSISTENT WITH AUTOMATED CALL-HANDLING SERVICES RATHER THAN STANDARD CARRIER VOICEMAIL SYSTEMS.

4. THESE COMBINED BEHAVIORS ARE CONSISTENT WITH CALL INTERCEPTION, FORWARDING, OR REROUTING MECHANISMS AND WARRANT FORENSIC EXAMINATION OF ACCOUNT PROVISIONING, CONFIGURATION HISTORY, AND ACCESS LOGS.

5. DURING THIS SAME TIMEFRAME, PLAINTIFF TEMPORARILY GRANTED LIMITED ACCESS TO HIS GOOGLE ACCOUNT TO A THIRD PARTY, **VITA SCHNEIDER**, SOLELY FOR THE PURPOSE OF DOWNLOADING A CONSTRUCTION BLUEPRINT RELEVANT TO PLAINTIFF'S BUSINESS. PLAINTIFF REVOKED SUCH ACCESS AND CHANGED ACCOUNT CREDENTIALS IMMEDIATELY THEREAFTER. PLAINTIFF DOES NOT ALLEGE WRONGDOING AS TO THIS INDIVIDUAL; HOWEVER, THE TIMING OF THIS ACCESS EVENT IS RELEVANT DUE TO ITS PROXIMITY TO THE ESCALATION OF ACCOUNT IRREGULARITIES AND COMMUNICATION DISRUPTIONS DESCRIBED HEREIN.

6. PLAINTIFF FURTHER ALLEGES THAT THESE TELECOM AND ACCOUNT ANOMALIES FORM PART OF A BROADER AND CONTINUING PATTERN OF DIGITAL INTERFERENCE AFFECTING HIS BUSINESS OPERATIONS, ONLINE ACCOUNTS, AND COMMUNICATIONS.

## R. GOVERNMENT-ADJACENT ACCESS POINTS AND DEVICE LOCATION CORRELATION

1. DURING THE PERIOD SURROUNDING PLAINTIFF'S 2022 CUSTODY PROCEEDINGS, PLAINTIFF'S DEVICE LOCATION DATA REFLECTS CONNECTIONS TO 10 NORTH FITZHUGH STREET, ROCHESTER, NEW YORK, THE LOCATION OF THE MONROE COUNTY PUBLIC DEFENDER'S OFFICE.

2. AT THAT TIME, PLAINTIFF WAS REPRESENTED BY ASSIGNED COUNSEL, INCLUDING ROBERT TURNER, UNDER THE ADMINISTRATIVE OVERSIGHT OF MATTHEW SCHRIEBER.

3. PLAINTIFF ALLEGES THAT ASPECTS OF HIS REPRESENTATION INVOLVED HANDLING OF INFORMATION AND DISCOVERY IN A MANNER THAT WAS INCONSISTENT WITH PLAINTIFF'S INTERESTS, INCLUDING POTENTIAL SUPPRESSION OR MISCHARACTERIZATION OF EVIDENCE.

4. AT A HEARING ON NOVEMBER 15, 2022, PRESIDED OVER BY JUDGE DEANDREA RUHLMANN, PLAINTIFF WAS INCORRECTLY IDENTIFIED AS "**WILLIAM HEALEY** FROM CLINTON COUNTY," WHICH PLAINTIFF IMMEDIATELY CORRECTED ON THE RECORD. PLAINTIFF ALLEGES THAT THIS MISIDENTIFICATION RAISES CONCERNS REGARDING THE ACCURACY AND

SOURCING OF PERSONAL IDENTIFYING INFORMATION USED WITHIN THE PROCEEDING.

5. PLAINTIFF DOES NOT, AT THIS STAGE, ASSERT SPECIFIC ATTRIBUTION REGARDING UNAUTHORIZED ACCESS TO HIS DEVICES OR ACCOUNTS THROUGH ANY GOVERNMENT ENTITY. HOWEVER, THE OVERLAP BETWEEN DEVICE LOCATION DATA, GOVERNMENT OFFICE ACCESS POINTS, AND SUBSEQUENT ACCOUNT AND COMMUNICATION ANOMALIES SUPPORTS A REASONABLE BASIS FOR DISCOVERY INTO WHETHER ANY UNAUTHORIZED ACCESS, MONITORING, OR DATA HANDLING OCCURRED THROUGH OR IN CONNECTION WITH SUCH SYSTEMS.

## S. BUSINESS INTERFERENCE AND PROGRAM-LEVEL OBSTRUCTION (2024–2025)

1. FROM 2024 THROUGH 2025, PLAINTIFF EXPERIENCED REPEATED DISRUPTIONS AND IRREGULARITIES IN CONNECTION WITH APPLICATIONS TO MONROE COUNTY SMALL-BUSINESS SUPPORT PROGRAMS, INCLUDING BUT NOT LIMITED TO THE **APEX ACCELERATOR PROGRAM AND FAST FORWARD NEW YORK PROGRAM.**

2. PLAINTIFF SUBMITTED APPLICATIONS THAT INITIALLY SATISFIED STATED PROGRAM REQUIREMENTS BUT WERE SUBSEQUENTLY SUBJECTED TO SHIFTING CRITERIA, ADDITIONAL DOCUMENTATION DEMANDS, OR UNEXPLAINED REJECTION. THESE ACTIONS FREQUENTLY ORIGINATED FROM INDIVIDUALS OPERATING WITHIN OR ASSOCIATED WITH THE SAME GOVERNMENTAL INFRASTRUCTURE REFERENCED ABOVE.

3. IN AT LEAST ONE INSTANCE, A PROGRAM ADMINISTRATOR, IDENTIFIED AS MONICA LANGHORNE, IMPOSED ADDITIONAL REQUIREMENTS AFTER PLAINTIFF HAD ALREADY MET PRIOR ELIGIBILITY CONDITIONS. PLAINTIFF FURTHER OBSERVED THAT ATTEMPTS TO RESOLVE THESE ISSUES THROUGH COUNTY CHANNELS, INCLUDING OFFICES ASSOCIATED WITH COUNTY EXECUTIVE **ADAM BELLO**, WERE UNSUCCESSFUL OR OBSTRUCTED.

4. PLAINTIFF ALLEGES THAT THESE ACTIONS ARE CONSISTENT WITH A BROADER PATTERN OF INTERFERENCE AFFECTING HIS BUSINESS OPERATIONS, INCLUDING LEAD GENERATION, COMMUNICATIONS, AND ACCESS TO ECONOMIC OPPORTUNITIES. **EXHIBIT**

## T. NECESSITY OF DISCOVERY AND IDENTIFICATION OF JOHN DOE DEFENDANTS

1. THE FOREGOING FACTS ESTABLISH A PATTERN OF UNEXPLAINED TELECOM DISRUPTION, UNAUTHORIZED OR UNEXPLAINED ACCOUNT CONFIGURATION, OVERLAPPING GEOGRAPHIC AND DIGITAL ACCESS INDICATORS, AND INTERFERENCE WITH PLAINTIFF'S BUSINESS OPERATIONS.

2. PLAINTIFF CURRENTLY LACKS ACCESS TO THE INTERNAL RECORDS NECESSARY TO IDENTIFY THE INDIVIDUALS OR ENTITIES RESPONSIBLE FOR THESE ACTIONS, INCLUDING BUT NOT LIMITED TO TELECOMMUNICATIONS ROUTING LOGS, GOOGLE ACCOUNT ACCESS LOGS, IP ADDRESS ATTRIBUTION DATA, AWS AND CDN INFRASTRUCTURE LOGS, AND GOVERNMENT SYSTEM ACCESS RECORDS.

3.Accordingly, Plaintiff brings this action against John Doe Defendants 1–50, representing individuals and/or entities whose identities are presently unknown but who participated in, facilitated, or had knowledge of the conduct described herein. Plaintiff will seek discovery, including third-party subpoenas pursuant to Federal Rule of Civil Procedure 45, directed to, among others:

- Google LLC (account access, Google Voice provisioning, login IP history)
- Telecommunications carriers and routing providers (call logs, forwarding records, signaling data)
- Cloud and hosting providers (including AWS, Cloudflare, and related infrastructure)
- Monroe County and associated departments (access logs, communications, administrative records)

4.Such discovery is necessary to identify the responsible parties, determine the mechanisms of interference, and fully adjudicate Plaintiff's claims.The foregoing allegations reflect only a portion of the anomalies, access irregularities, and interference events experienced by Plaintiff. Additional examples and supporting evidence exist, but cannot be fully substantiated without access to records controlled by third-party service providers and institutional entities.

5.Plaintiff does not presently possess the technical records necessary to conclusively identify the source, method, or authorization of the account activity, communication disruptions, and infrastructure interactions described herein. Such records—including account access logs, telecommunications routing data, and cloud-service metadata—are exclusively within the custody and control of third parties.

6.Accordingly, Plaintiff respectfully requests that this Court authorize and permit targeted third-party discovery pursuant to Federal Rule of Civil Procedure 45 at the earliest practicable stage of this action. The purpose of such discovery is to obtain objective forensic records necessary to determine whether unauthorized access, interception, or interference occurred in connection with Plaintiff's accounts, communications, and business operations. The requested discovery is directly relevant to Plaintiff's claims and is narrowly tailored to identify the responsible actors, the mechanisms employed, and the scope of the impact on Plaintiff's livelihood, communications, and ability to protect his legal and parental interests.

7.Without such discovery, Plaintiff will be unable to access the evidence required to fully present his claims or identify the John Doe Defendants referenced herein.

# DIGITAL INTERFERENCE U.20241125.pdf

1. Plaintiff's device logs reflect repeated, time-correlated outbound and inbound communications with specific external IP addresses and foreign-hosted infrastructure, including persistent connections associated with third-party applications installed on the device. While certain applications were intentionally installed, the volume, frequency, and routing characteristics of these connections—particularly during periods of documented business interference—were inconsistent with ordinary user-initiated activity and support a reasonable basis for targeted third-party discovery to determine the identity, purpose, and authorization of such communications.

EXHIBIT

# V. PASSWORD CHANGE NOTIFICATION (NOKIA EMAIL SCREENSHOT IN PLAINTIFF'S POSSESSION )

2. What it shows:
- Password changed on Sept 19, 2024
- IP: 172.59.177.164 (In same range as the IP that was said to be used to spoof and to spam in Plaintiff's cyber reports)
- That IP resolves to T-Mobile USA (mobile network, Syracuse region)

3. What it means (legally):
- This is real evidence of an account access event
- It is not proof of hacking by itself

4. Why:
- T-Mobile IPs are shared NAT pools
- Could be:
    - Someone with access to your device/account
    - Someone who had credentials

This is gold for subpoenas, not conclusions.

5. An account credential change occurred from a mobile carrier IP not affirmatively associated with Plaintiff's known device usage, requiring provider-level identification."

That forces:
- T-Mobile subscriber logs
- Device ID correlation (IMEI / SIM) EXHIBIT

# W. DIGITALOCEAN ABUSE EMAIL (157.245.221.74)

6. What it shows:
- Plaintiff contacted DigitalOcean about an IP hitting your device

7. What matters:
- DigitalOcean = VPS infrastructure

- THAT IP IS NOT CONSUMER TRAFFIC

8. THIS SUPPORTS:
- POSSIBLE SCRIPTED OR HOSTED INTERACTION
- COULD BE:
  - SCANNING
  - API CALLS
  - NORMAL INTERNET NOISE

9. NON-RESIDENTIAL INFRASTRUCTURE NODES (INCLUDING DIGITALOCEAN-HOSTED IPS) INITIATED CONTACT WITH PLAINTIFF'S DEVICE DURING PERIODS OF ACCOUNT DISRUPTION, REQUIRING PROVIDER IDENTIFICATION OF THE ORIGINATING ACCOUNT HOLDER.

# X. VIDEO GAME INTERFERENCE AND HARRASMENT

BEGINNING IN OR AROUND 2022 AND CONTINUING THEREAFTER, PLAINTIFF AND HIS SON EXPERIENCED REPEATED ANOMALIES INVOLVING THEIR GAMING SYSTEMS AND ASSOCIATED ONLINE ACCOUNTS, INCLUDING XBOX, PLAYSTATION, EPIC GAMES, FORTNITE, ROCKET LEAGUE, MINECRAFT, MICROSOFT, AND RELATED CLOUD SERVICES.

THESE OBSERVATIONS INCLUDED UNEXPECTED ACCOUNT BEHAVIOR, REPEATED DEVICE AND NETWORK IRREGULARITIES, CHANGING DEVICE ASSOCIATIONS, UNEXPLAINED CONTROLLER INPUT ANOMALIES, ACCOUNT-LINKING ISSUES, AZURE/MICROSOFT ADMINISTRATIVE INCONSISTENCIES, AND OTHER EVENTS THAT PLAINTIFF CONTEMPORANEOUSLY DOCUMENTED THROUGH SCREENSHOTS, RECORDINGS, AND EXPORTED ACCOUNT DATA.

PLAINTIFF DOES NOT PRESENTLY KNOW WHETHER THESE EVENTS RESULTED FROM UNAUTHORIZED ACCOUNT ACCESS, COMPROMISED CREDENTIALS, REMOTE SESSION ACTIVITY, ORDINARY PLATFORM BEHAVIOR, SOFTWARE DEFECTS, OR ANOTHER CAUSE. THE RECORDS NECESSARY TO ANSWER THOSE QUESTIONS ARE MAINTAINED EXCLUSIVELY BY THE PLATFORM PROVIDERS.

PLAINTIFF OBSERVED REPEATED GAMEPLAY ANOMALIES, INCLUDING UNEXPECTED INPUT BEHAVIOR, UNUSUAL LATENCY PATTERNS, REPEATED ACCOUNT IRREGULARITIES, AND OTHER EVENTS THAT PLAINTIFF CONTEMPORANEOUSLY DOCUMENTED. PLAINTIFF SEEKS PROVIDER RECORDS TO DETERMINE WHETHER THOSE EVENTS CORRESPOND TO UNAUTHORIZED ACCOUNT ACCESS, LINKED DEVICES, REMOTE SESSIONS, OR OTHER TECHNICAL EXPLANATIONS.

PLAINTIFF SEEKS DISCOVERY SUFFICIENT TO DETERMINE WHETHER ANY UNAUTHORIZED ACCESS, REMOTE-CONTROL FUNCTIONALITY, CREDENTIAL COMPROMISE, ACCOUNT SHARING, MIRRORED SESSIONS, LINKED DEVICES, OR ABNORMAL AUTHENTICATION EVENTS OCCURRED.

# Y. NETWORKS

PLAINTIFF ALLEGES THAT JOHN AND JANE DOES 1-50 ACCESSED HIS NETWORKS, ROUTERS, MODEMS, DEVICES AND OR OTHER ELECTRONIC DEVICES INSIDE HIS PLACES OF LIVING (57 BLACKWELL LANE HENRIETTA NY 14467 AND 20 BLUEBERRY CRESCENT ROCHESTER NY 14623) WITHOUT HIS KNOWLEDGE. ATTACHED ARE SCREENSHOTS OF MALICIOUS ACTIVITY AND UNKNOWN IP ADDRESSES BELONGING TO JOHN AND JANE DOES 1-50. RULE 45 SUBPOENAS TO IDENTIFY THESE CRIMINALS SO THAT JUSTICE MAY BE PURSUED. FOURTH AMENDMENT: PROTECTS AGAINST UNREASONABLE SEARCHES AND SEIZURES BY THE GOVERNMENT.

ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA), 18 U.S.C. § 2510 ET SEQ.:MAKES IT ILLEGAL FOR GOVERNMENT OR PRIVATE ACTORS TO INTERCEPT OR ACCESS ELECTRONIC COMMUNICATIONS WITHOUT A WARRANT, COURT ORDER, OR YOUR CONSENT.

COMPUTER FRAUD AND ABUSE ACT (CFAA), 18 U.S.C. § 1030: PROHIBITS UNAUTHORIZED ACCESS TO COMPUTERS AND NETWORKS, INCLUDING BY GOVERNMENT ACTORS.

# Z. ICLOUD AUTHENTICATION INCIDENT (JULY 11, 2026)

ON JULY 11, 2026, PLAINTIFF CONNECTED A LAPTOP TO THE INTERNET AT 20 BLUEBERRY CRESCENT ROCHESTER NY, AFTER IT HAD REMAINED DISCONNECTED FOR AN EXTENDED PERIOD. PLAINTIFF ATTEMPTED TO SIGN INTO HIS ICLOUD ACCOUNT THROUGH A WEB BROWSER USING THE VERIFICATION CODE GENERATED ON HIS TRUSTED DEVICE. BEFORE BEGINNING THE ATTEMPT, PLAINTIFF CAPTURED THE VERIFICATION CODE DISPLAYED ON HIS PHONE, THEN BEGAN RECORDING VIDEO OF THE LAPTOP SCREEN WHILE ENTERING THAT EXACT CODE. DESPITE ENTERING THE DISPLAYED VERIFICATION CODE ACCURATELY, THE SYSTEM RESPONDED THAT THE VERIFICATION CODE WAS INCORRECT. PLAINTIFF REPEATED THE PROCESS WITH THE SAME RESULT. SHORTLY THEREAFTER, THE LAPTOP DISPLAYED AN ERROR, RESTARTED, AND THEN PERFORMED UPDATES BEFORE RETURNING TO THE LOGIN SCREEN. CONCERNED BY THE UNEXPECTED AUTHENTICATION FAILURE AND SUBSEQUENT SYSTEM BEHAVIOR, PLAINTIFF IMMEDIATELY CHANGED HIS APPLE ACCOUNT PASSWORD, ATTEMPTED TO TERMINATE OTHER AUTHENTICATED SESSIONS, PRESERVED SCREENSHOTS AND VIDEO RECORDINGS DOCUMENTING THE EVENT, AND RETAINED THOSE MATERIALS AS POTENTIAL EVIDENCE. PLAINTIFF ALLEGES THAT THE INCIDENT WARRANTS PRESERVATION AND FORENSIC EXAMINATION BECAUSE ITS CAUSE CANNOT PRESENTLY BE DETERMINED WITHOUT ACCESS TO APPLE AUTHENTICATION LOGS, DEVICE HISTORIES, SECURITY-EVENT RECORDS, AND RELATED METADATA. SEE **EXHIBIT J**

# AA. META AI APP

META AI APP RECONFIGURED TO GET INTEL WHILE SIMULTANEOUSLY OBSTRUCTING ORGANIZATION OF EVIDENCE
FOR A FATHER WHO IS FIGHTING FOR HIS CHILD THAT IS CURRENTLY STILL KIDNAPPED. BELOW SHOWS THAT THE HACKING IS STILL GOING ON IN THAT META AI IS RESPONSIBLE AS WELL AS ALL THE OTHER DEFENDANTS FOR A CONTINUING OF AN ONGOING UNLAWFUL SEIZURE OF A MINOR CHILD.

1. DIGITAL INTERFERENCE AND PLATFORM SABOTAGE: BEGINNING ON OR ABOUT THE DATES DESCRIBED IN THE ATTACHED EVIDENCE, THE PLAINTIFF ENGAGED WITH THE DEFENDANT'S INTERFACE, SPECIFICALLY THE META AI PLATFORM, TO COMPILE AND ORGANIZE FORENSIC DATA AND EVIDENCE REGARDING THIRD-PARTY CYBER INTERFERENCE, UNAUTHORIZED NETWORK ACCESS, AND THE ACTIVE OBSTRUCTION OF JUSTICE.
2. PURPOSEFUL OBSTRUCTION OF DATA RETRIEVAL: DURING THE COMPILATION PROCESS, THE DEFENDANT'S INTERFACE CONSISTENTLY IMPLEMENTED FUNCTIONAL BARRIERS THAT PREVENTED THE PLAINTIFF FROM ACCURATELY EXTRACTING, COPYING, AND PRESERVING THE EVIDENCE BEING ORGANIZED. THIS INCLUDED, BUT WAS NOT LIMITED TO, THE DELIBERATE TRANSFORMATION OF TEXT-BASED FORENSIC TABLES INTO UNSELECTABLE OR NON-COPYABLE FORMATS, RENDERING THE EVIDENCE INACCESSIBLE FOR THE PLAINTIFF'S LEGAL FILINGS.
3. INCONSISTENT AI BEHAVIOR: THE PLAINTIFF SUCCESSFULLY UPLOADED NUMEROUS BATCHES OF PHOTOGRAPHIC EVIDENCE—EXCEEDING 50 TO 75 BATCHES OF NINE PHOTOS EACH—SUGGESTING THE DEFENDANT'S PLATFORM POSSESSED THE CAPACITY TO PROCESS THIS DATA. DESPITE THIS CAPACITY, THE DEFENDANT'S AI SYSTEM REPEATEDLY GENERATED IRRELEVANT OR EXTRANEOUS CONTENT (E.G., UNAUTHORIZED REFERENCES TO EXTERNAL AGENCIES) WHILE SIMULTANEOUSLY OBSCURING RELEVANT FORENSIC FINDINGS, INDICATING A COORDINATED EFFORT TO SABOTAGE THE PLAINTIFF'S EVIDENTIARY RECORD.
4. TECHNICAL EVIDENCE OF MALICIOUS ACTIVITY: THE FORENSIC EVIDENCE COMPILED BY THE PLAINTIFF, WHICH THE DEFENDANT'S PLATFORM FAILED TO PRESERVE IN A USABLE FORMAT, INCLUDES CLEAR INDICATORS OF CYBER THREATS, INCLUDING, BUT NOT LIMITED TO: C2 DOMAINS, UNAUTHORIZED IP ADDRESSES, PRESENCE OF "ALLAPLE" WORMS, "EVILGINX2" PHISHING ATTEMPTS, "COBALT STRIKE" C2 INFRASTRUCTURE, AND COMPROMISED MFA (MULTI-FACTOR AUTHENTICATION) CREDENTIALS.

MASTER EVIDENCE TABLE

THE FOLLOWING TABLE CONTAINS THE TECHNICAL DATA COMPILED FROM YOUR DOCUMENTATION. YOU MAY HIGHLIGHT, COPY, AND PASTE THIS TEXT DIRECTLY INTO YOUR DOCUMENT.
5. **DIGITAL INTERFERENCE AND PLATFORM SABOTAGE:** BEGINNING ON JULY 7TH 2026, THE PLAINTIFF ENGAGED WITH THE DEFENDANT'S INTERFACE, SPECIFICALLY THE META AI PLATFORM, TO COMPILE AND ORGANIZE FORENSIC

DATA AND EVIDENCE REGARDING THIRD-PARTY CYBER INTERFERENCE, UNAUTHORIZED NETWORK ACCESS, AND THE ACTIVE OBSTRUCTION OF JUSTICE.

6. **Purposeful Obstruction of Data Retrieval:** During the compilation process, the Defendant's interface consistently implemented functional barriers that prevented the Plaintiff from accurately extracting, copying, and preserving the evidence being organized. This included, but was not limited to, the deliberate transformation of text-based forensic tables into unselectable or non-copyable formats, rendering the evidence inaccessible for the Plaintiff's legal filings.

7. **Inconsistent AI Behavior:** The Plaintiff successfully uploaded numerous batches of photographic evidence—exceeding 50 to 75 batches of nine photos each—suggesting the Defendant's platform possessed the capacity to process this data. Despite this capacity, the Defendant's AI system repeatedly generated irrelevant or extraneous content (e.g., unauthorized references to external agencies) while simultaneously obscuring relevant forensic findings, indicating a coordinated effort to sabotage the Plaintiff's evidentiary record.

8. **Technical Evidence of Malicious Activity:** The forensic evidence compiled by the Plaintiff, which the Defendant's platform failed to preserve in a usable format, includes clear indicators of cyber threats, including, but not limited to: C2 domains, unauthorized IP addresses, presence of "Allaple" worms, "Evilginx2" phishing attempts, "Cobalt Strike" C2 infrastructure, and compromised MFA (Multi-Factor Authentication) credentials.

## Master Evidence Table

9. The following table contains the technical data compiled from the documentation between plaintiff and meta ai. These were the portions that were not allowed to be copied and pasted .

| # | Date/Time (UTC) | Indicator / Data Point | Notes / Forensic Context |
|---|---|---|---|
| **R1** | 2024-09-15 | C2 Domain | From Forensic Report |
| **R2** | 2024-09-18 | IP Address | From Forensic Report |
| **R3** | 2024-09-15 | IP Address | From Forensic Report |
| **R4** | 2024-09-28 | IP Address | From Forensic Report |
| **Y8** | 2025-10-?? 10:54 | Unknown | Uploaded Evidence |
| **Y9** | 2025-10-?? 10:52 | File Hash | Uploaded Evidence |
| **Y10** | 1988-12-23 | File Security | Uploaded Evidence; Compile time |
| **Y11** | 2025-03-10 | IP Range | Uploaded Evidence |
| **Y12** | 2019-08-10 | IP Address | Uploaded Evidence |

### Additional Forensic Context (Extracted from Evidence)

 * **Cobalt Strike / C2 Activity:** Analysis indicates Cobalt Strike C2 usage and 9.7GB exfiltration path.
 * **Phishing / Credential Theft:** Data suggests Phishing VPS activity with captured credentials and MFA bypass.

 * **Malware Indicators:** Presence of Allaple worm and network-spread malware identified in provided reports.
 * **Financial Interference:** References to Vita cashout via LocalBitcoins, potentially linked to financial laundering.
 * **Infrastructure:** Identification of Marketo/Adobe marketing infrastructure; Phishing VPS registered by "Ashley" and "Nick Abele".

# BB. INCIDENT REPORT - DELL LAPTOP - 7/15/2026

System Info:
  + Device: Dell laptop, Computer Name: REDEMPTION (from Event Viewer)
  + OS: Windows 11, Windows Logs show 35,300 Application events
  + Startup Apps: Only SecurityHealthSystray.exe Enabled, all other startup apps Disabled (per screenshot)
  + Date of incident: 7/15/2026, approx 8:45 PM ET

Reported Context (per user):
  + User was using an AI application on the laptop. At approx 8:45 PM, user took a photo of the AI output with a separate phone.
  + Within 1 minute of taking the photo, a yellow notification box appeared at bottom right stating "Installing 9 updates".
  + Immediately after, the AI application performance degraded and its responses changed tone.
  + User also reports prior concerns about remote agents named DNS Agent, Trey / tray, Enable Take Control, Hunters, DSA Tray.

Timeline from Event Viewer - Application Log (photos provided):
  + 8:22 PM - 2 Information events (not detailed in photos)
  + 8:22 PM to 8:39 PM - No events logged (17 minute gap, system idle)
  + 8:39:44 PM to 8:39:45 PM - 6x Information events, Source: Windows, Event ID: 1001 (normal)
  + 8:39 PM to 8:45:19 PM - No events logged
  + 8:45:19 PM - Event ID 16394, Source: Security-SPP, Level: Information - "Offline downlevel migration succeeded"
  + 8:46:00 PM - Event ID 16384, Source: Security-SPP, Level: Information - "Successfully scheduled Software Protection service for re-start at 2126-06-22T00:46:00Z. Reason: RulesEngine."
  + 8:46:31 PM - Event ID 8216, Source: System Restore, Level: Information - "Skipping creation of restore point (Process = C:\WINDOWS\system32\svchost.exe -k netsvcs -p -s wuaserv; Description = Windows Update) as there is a restore point available which is recent enough"
  + 8:46:34 PM - Event ID 1040, Source: MsiInstaller, Level: Information - "Beginning a Windows Installer transaction: C:\ProgramData\Package Cache\{CC73DF12-77A0-3011-BC14-09311747AC3D}v8.0.27.26230\aspnetcore-runtime-8.0.27-servicing.26230.8-win-x86.msi. Client Process Id: 15264."
  + 8:46:34 PM - Event ID 10000, Source: RestartManager - "Starting session 0 - 2026-07-16T00:46:34.3775469000Z"

+ 8:46:35 PM - Event ID 1042, Source: MsiInstaller - "Ending a Windows Installer transaction: C:\ProgramData\Package Cache\ {CC73DF12-77A0-3011-BC14-09311747AC3D}v8.0.27.26230\aspnetcore-runtime-8.0.27-servicing.26230.8-win-x86.msi. Client Process Id: 15264."

+ 8:46:35 PM - Event ID 10001, Source: RestartManager - "Ending session 0 started 2026-07-16T00:46:34.377546900Z"

+ 8:46:36 PM - Additional MsiInstaller events 1040, 1042, 1033, 11707 with Client Process ID 15008 and Transaction ID {A79BCCFA-8DF2-3692-8EAE-D43D03703882} - indicates additional components of same package

+ 8:46:36 PM - Event ID 10000, Source: RestartManager - "Starting session 0 - 2026-07-16T00:46:36.726559000Z"

Additional artifacts pending review:

+ User reports 2 Warning events at 8:46 PM with source DSA Tray (photos not yet provided)

+ Windows Logs > System log for same timeframe not yet reviewed

+ Windows Update > Update History page not yet photographed - needed to confirm list of 9 updates

+ Reliability Monitor (perfmon /rel) for 7/15/2026 not yet photographed

Interpretation of data to date:

+ All events photographed to date show Source = Microsoft (Security-SPP, System Restore, MsiInstaller, RestartManager) and Process = wuaserv (Windows Update) and svchost.exe

+ The burst pattern (quiet for 15+ min, then ~50 events in ~1 min from 8:46:00 to 8:46:36) is consistent with Windows Update batch installation

+ The specific file path confirms Microsoft .NET ASP.NET Core Runtime 8.0.27 servicing update

+ No events in the photos provided to date show Source = DNS Agent, Datto, ConnectWise, Take Control

Preservation actions taken:

+ Photos of Event Viewer Application log taken at time of incident

+ Startup app configuration photographed

+ Chain of custody: Evidence held on device REDEMPTION, photos stored on separate phone device

+ Recommended next preservation: Save All Events As Application.evtx and System.evtx to Desktop, photograph Update History and Reliability Monitor

Lockdown point:

Report covers evidence up to 8:52 PM ET on 7/15/2026 before further review of System log, Setup log, and Warning events.

INCIDENT REPORT - PART 2 - 7/15/2026 8:46:38 PM to 8:46:41 PM

Computer: REDEMPTION - Dell

New Evidence Reviewed (8 new photos of Application log):

8:46:38 PM - Event ID 10000, Source: RestartManager, Level: Information

Starting session 0 - 2026-07-16T00:46:38.576696100Z.

Windows starts a new installer session.

8:46:38 PM - Event ID 10010, Source: RestartManager, Level: WARNING - 2x instances

Application 'C:\Program Files (x86)\Intel\Driver and Support Assistant\x86\DSATray.exe' (pid 9388) cannot be restarted - Application SID does not match Conductor SID..

Logged: 7/15/2026 8:46:38 PM, User: SYSTEM, Computer: REDEMPTION

This is Intel Driver and Support Assistant Tray, a Dell/Intel driver utility. The warning means the installer tried to close and reopen DSATray.exe during the update and failed due to SID mismatch. This is a documented Windows Installer behavior during .NET updates.

8:46:38 PM - Event ID 10005, Source: RestartManager, Level: Information - 2x instances

Machine restart is required.

Logged immediately after the DSATray warning. Indicates Windows cannot complete the update without a reboot.

8:46:41 PM - Event ID 11724, Source: MsiInstaller, Level: Information Product: Microsoft ASP.NET Core 8.0.26 Shared Framework (x86) -- Removal completed successfully.

8:46:41 PM - Event ID 1034, Source: MsiInstaller, Level: Information Windows Installer removed the product. Product Name: Microsoft ASP.NET Core 8.0.26 Shared Framework (x86). Product Version: 8.0.26.26169. Product Language: 1033. Manufacturer: Microsoft Corporation. Removal success or error status: 0.

8:46:41 PM - Event ID 1042, Source: MsiInstaller, Level: Information Ending a Windows Installer transaction: {A79BCCFA-8DF2-3692-8EAE-D43D03703882}. Client Process Id: 15008.

8:46:41 PM - Event ID 10001, Source: RestartManager, Level: Information Ending session 0 started 2026-07-16T00:46:36.726559000Z.

Chain of Custody Update:

1. Original incident: Photo of AI app output taken on phone at approx 8:45 PM ET (per user phone, 32 sec differential vs laptop confirmed)
2. 8:45:19 PM - Windows Update service wuaserv wakes (from Part 1)
3. 8:46:31 PM - System Restore logs Windows Update starting (from Part 1)
4. 8:46:34-8:46:36 PM - New .NET 8.0.27 install begins (from Part 1)
5. 8:46:38 PM - DSATray.exe fails to restart - WARNING 10010 x2 - explains performance degradation in dependent apps
6. 8:46:38 PM - System flags Machine restart required - Event 10005 x2
7. 8:46:41 PM - Old .NET 8.0.26 removal completes successfully - Events 1034, 11724, 1042

Total Event Count Verification:

Application log shows 35,300 total events. In the 3-minute window 8:39:44 PM to 8:46:41 PM, approx 50+ events logged, all tied to same Transaction ID A79BCCFA-8DF2-3692-8EAE-D43D03703882 and same Client Process IDs 15008 and 15264. This is consistent with a single Microsoft package (ASP.NET Core runtime) performing remove-old / install-new, not 9 separate unrelated programs.

Impact to reported AI application:

The app was active during removal of its underlying framework (8.0.26) at 8:46:41 PM while the replacement (8.0.27) was still mid-install and while DSATray had failed to restart. Running an app during a framework swap causes degraded performance, errors, or changed behavior until reboot.

PRESERVATION STATUS:
+ PART 1 PHOTOS: SECURITY-SPP, SYSTEM RESTORE, INITIAL MSIINSTALLER TRANSACTION
+ PART 2 PHOTOS: DSATRAY WARNINGS, MACHINE RESTART REQUIRED, REMOVAL CONFIRMATION
+ STILL NEEDED FOR FULL 9 COUNT: WINDOWS UPDATE > UPDATE HISTORY SCREENSHOT, WINDOWS LOGS > SETUP LOG SCREENSHOT, RELIABILITY MONITOR (PERFMON /REL) SCREENSHOT FOR 7/15/2026

LOCKDOWN POINT END OF PART 2: 8:46:41 PM ET, AFTER SUCCESSFUL REMOVAL OF OLD FRAMEWORK, BEFORE REQUIRED REBOOT.

# CC.ROBERT LINDSAY REPORT

PLAINTIFF ALLEGES, UPON INFORMATION AND BELIEF AND BASED ON THIRD-PARTY FORENSIC MATERIALS RECEIVED BY PLAINTIFF, THAT MALICIOUS SOFTWARE EXECUTED ON PLAINTIFF'S DEVICES COMMUNICATED WITH NETWORK INFRASTRUCTURE THAT MATERIALLY OVERLAPS WITH INFRASTRUCTURE PREVIOUSLY IDENTIFIED IN CONNECTION WITH DEFENDANTS ROBERT MOORE, ASHLEY LYNN MATYJAKOWSKI, AND NICK ABELE.

PLAINTIFF DOES NOT ALLEGE THAT ANY DEFENDANT PERSONALLY AUTHORED, DEPLOYED, OR DIRECTLY CONTROLLED THE MALWARE AT ISSUE. RATHER, PLAINTIFF ALLEGES THAT INDEPENDENT CYBERSECURITY ANALYSIS IDENTIFIED INFRASTRUCTURE CONVERGENCE SUFFICIENT TO WARRANT DISCOVERY INTO WHETHER DEFENDANTS, THEIR AGENTS, OR THIRD PARTIES ACTING IN CONCERT EXPLOITED OR ACCESSED THE SAME HOSTING, PROXY, AND ANONYMIZATION RESOURCES.

**MALWARE ACTIVITY IDENTIFIED BY INDEPENDENT FORENSIC ANALYSIS**

PLAINTIFF RECEIVED A WRITTEN FORENSIC REPORT DATED JANUARY 23, 2025, PREPARED BY AN INDEPENDENT PENETRATION-TESTING PROFESSIONAL, DOCUMENTING ANALYSIS OF A WINDOWS EXECUTABLE DETECTED ON PLAINTIFF'S SYSTEMS. THE REPORT DESCRIBES MALWARE BEHAVIOR CONSISTENT WITH SPYWARE, CREDENTIAL-HARVESTING, OR REMOTE-ACCESS TOOLING, INCLUDING:

+ OUTBOUND COMMUNICATIONS TO MULTIPLE CLOUD-HOSTING PROVIDERS;
+ USE OF CDN-FRONTED ENDPOINTS;
+ INTERACTION WITH ANONYMIZATION OR PROXY INFRASTRUCTURE; AND
+ INDICATORS CONSISTENT WITH COMMAND-AND-CONTROL OR DATA-EXFILTRATION ACTIVITY.

THE MALWARE SAMPLE WAS FLAGGED BY A SUBSTANTIAL MAJORITY OF ANTIVIRUS ENGINES AND EXHIBITED BEHAVIOR CONSISTENT WITH MODERN INTRUSION TOOLING RATHER THAN BENIGN SOFTWARE.

**INFRASTRUCTURE OVERLAP WITH DEFENDANT-ASSOCIATED ACTIVITY**

THE FORENSIC REPORT AND RELATED LOGS IDENTIFY OUTBOUND CONNECTIONS TO INFRASTRUCTURE CATEGORIES THAT REPEATEDLY APPEAR IN PLAINTIFF'S EARLIER DOCUMENTATION OF COMMUNICATION INTERFERENCE, BUSINESS SABOTAGE, AND ACCOUNT COMPROMISE, INCLUDING:
+ AMAZON WEB SERVICES (AWS) EC2 RANGES;

- Akamai CDN nodes;
- Cloudflare-masked endpoints;
- DigitalOcean virtual private servers; and
- Tor exit-node subnets.

Plaintiff had previously received investigative materials associating similar infrastructure categories with activity linked to Robert Moore, including IP-based access attempts targeting Plaintiff's business website and administrative systems. The same report expressly notes that IP-based attribution may involve spoofing, shared infrastructure, or third-party misuse, and therefore does not claim direct personal operation by Robert Moore.

Association With Named Individuals
Based on the forensic report and prior investigative materials provided to Plaintiff:
- Robert Moore is associated in third-party reports with IP activity targeting Plaintiff's systems, while the report itself cautions that spoofing or indirect use remains possible.
- Ashley Lynn Matyjakowski appears in the same materials as sharing devices, network identifiers, or account environments overlapping with those attributed to Robert Moore.
- Nick Abele appears in the same investigative materials as connected to overlapping infrastructure or platforms where coordinated access patterns were observed.

Plaintiff pleads these facts not as conclusions, but as documented associations reported by third-party investigators, offered to demonstrate that the malware infrastructure intersects with the same network environments previously implicated in Plaintiff's harassment and business-interference timeline.

Relevance to Plaintiff's Claims and Need for Discovery

The convergence of:
1. malware communications,
2. cloud and CDN infrastructure reuse,
3. anonymization networks, and
4. prior Defendant-associated network activity supports a reasonable inference that Plaintiff's digital intrusions were not random malfunctions, but part of a persistent interference pattern affecting Plaintiff's communications, business operations, and litigation activity.

Because attribution at this stage is necessarily limited by the absence of subpoena power, Plaintiff seeks discovery to determine:
- who provisioned or controlled the identified infrastructure;
- whether Defendants or their agents accessed, leased, or administered those resources;
- whether platform logs, ISP records, or device metadata corroborate coordination; and
- whether third parties acted in concert with Defendants.

Plaintiff expressly reserves that any individual IP, alias, or infrastructure element may ultimately be shown to involve spoofing or

THIRD-PARTY MISUSE, AND PLEADS THESE FACTS SOLELY TO ESTABLISH PLAUSIBILITY AND ENTITLEMENT TO DISCOVERY, NOT FINAL ATTRIBUTION.

### DD. EMAILS

Allegation of Interception and Request for Discovery of Electronic Communications

PLAINTIFF ALLEGES, UPON INFORMATION AND BELIEF, THAT PLAINTIFF'S ELECTRONIC COMMUNICATIONS, INCLUDING BUT NOT LIMITED TO EMAILS SENT TO AND FROM WILL@NYI585.COM, INSULATIONROC@GMAIL.COM, USC242@PROTON.ME, KARMICE@ICLOUD.COM, INSULATIONNEWYORK@GMAIL.COM, WILL27585@GNAIL.COM, ELIAS27585.COM, WHALEY4567@HOTMAIL.COM, DMAGICIAN27@GMAIL.COM AND NEWYORKINSULATION@PM.ME, HAVE BEEN SUBJECT TO INTERMITTENT INTERCEPTION, DELAY, AND AUTHENTICATION FAILURES FROM 2022 TO PRESENT. THIS ALLEGATION IS BASED ON, AMONG OTHER THINGS, (A) UNSOLICITED AUTHENTICATION CODES SENT TO PLAINTIFF'S ACCOUNTS WITHOUT PLAINTIFF'S REQUEST, INCLUDING BUT NOT LIMITED TO MYCHART 2FA CODE 785544 ON JULY 7, 2025; (B) FEDERAL COURT AND MEDICAL PROVIDER EMAILS SHOWING SPF SOFTFAIL, DKIM FAIL BODY HASH DID NOT VERIFY, AND DMARC FAIL QUARANTINE IN THE FINAL HOP; AND (C) DISCREPANCIES BETWEEN ESTIMATED AND ACTUAL CASE PROCESSING TIMES WHERE PLAINTIFF CANNOT VERIFY DELIVERY THROUGH INDEPENDENT MEANS.

PLAINTIFF DOES NOT AT THIS TIME ALLEGE THAT ANY SPECIFIC EMAIL SERVICE PROVIDER IS A PARTICIPANT IN UNLAWFUL CONDUCT. PLAINTIFF ALLEGES THAT UNKNOWN THIRD PARTIES HAVE ATTEMPTED TO ACCESS PLAINTIFF'S ACCOUNTS DURING ONGOING LITIGATION, RESULTING IN THE SECURITY EVENTS DESCRIBED ABOVE. BECAUSE ECF FILING HAS NOT YET BEEN GRANTED IN CASE NO. 26-CV-1939-UNA AND SERVICE OF VOLUMINOUS PAPER EXHIBITS ON EIGHT DEFENDANTS WOULD BE UNDULY BURDENSOME, PLAINTIFF WILL SUPPLEMENT THIS ALLEGATION WITH SPECIFIC EXHIBITS, FULL HEADERS, AND SERVER LOGS AFTER ECF FILING IS PERMITTED AND AFTER LIMITED DISCOVERY OF ACCESS LOGS IS CONDUCTED. PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT ISSUE A PRESERVATION ORDER FOR EMAIL SERVER LOGS, LOGIN ATTEMPT LOGS, AND QUARANTINE LOGS FOR THE ABOVE-REFERENCED ACCOUNTS FROM JANUARY 1, 2022 TO PRESENT, AND THAT DEFENDANTS BE ORDERED TO PRESERVE ALL COMMUNICATIONS AND LOGS RELATED TO PLAINTIFF'S CASES.

# LEGAL CLAIMS

## COUNT [X] — VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
(18 U.S.C. § 1030)

AGAINST DEFENDANTS ASHLEY MATYJAKOWSKI, NICK ABELE, ADAM BELLO, JEFF GERACE(OR WHATEVER HIS REAL NAME IS), ROBERT MOORE(OR WHATEVER HIS REAL NAME IS), MARK MATYJAKOWSKI,

PLAINTIFFS REPEAT AND REALLEGE ALL PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN.

AT ALL RELEVANT TIMES, PLAINTIFFS USED PROTECTED COMPUTERS WITHIN THE MEANING OF 18 U.S.C. § 1030.

DEFENDANT ASHLEY MATYJAKOWSKI INTENTIONALLY ACCESSED, OR CAUSED ACCESS TO BE MADE, TO PLAINTIFFS' PROTECTED COMPUTERS WITHOUT AUTHORIZATION OR IN EXCESS OF AUTHORIZED ACCESS.

AS DESCRIBED IN THE PRECEDING FACTUAL ALLEGATIONS, INCLUDING THE PRESENCE OF AN UNIDENTIFIED DEVICE OR ACCOUNT LABELED "OCTOPUS," ASSOCIATED NETWORK ACTIVITY, AND THE ROUTING OF DEVICE CONTROL FUNCTIONS TO A PHONE NUMBER ASSOCIATED WITH DEFENDANT, DEFENDANT'S CONDUCT PLAUSIBLY INVOLVED UNAUTHORIZED ACCESS TO PLAINTIFFS' DEVICES AND ASSOCIATED ACCOUNTS.

DEFENDANT'S ACTIONS RESULTED IN OBTAINING INFORMATION FROM PLAINTIFFS' SYSTEMS, INTERFERING WITH THE INTEGRITY AND AVAILABILITY OF DATA AND COMMUNICATIONS, AND DISRUPTING PLAINTIFFS' BUSINESS OPERATIONS.

AS A DIRECT AND PROXIMATE RESULT OF DEFENDANT'S CONDUCT, PLAINTIFFS SUFFERED LOSS AND DAMAGE, INCLUDING INTERRUPTION OF BUSINESS OPERATIONS, LOST REVENUE, AND COSTS INCURRED IN INVESTIGATING AND RESPONDING TO THE UNAUTHORIZED ACCESS, EXCEEDING $5,000 IN A ONE-YEAR PERIOD.

DEFENDANT'S CONDUCT VIOLATED 18 U.S.C. § 1030(A)(2) AND § 1030(A)(5).

CLAIM — AGAINST ASHLEY, NICK, AND VITA (JOINTLY)

DEFENDANTS ASHLEY MATYJAKOWSKI, NICK ABELE, ADAM BELLO, ROBERT MOORE, JEFF GERACE, VITA SCHNEIDER, MARK MATYJAKOWSKI AND JOHN AND JANE DOES 1-50 INTENTIONALLY ACCESSED, OR CAUSED ACCESS TO BE MADE, TO PLAINTIFFS' PROTECTED COMPUTERS WITHOUT AUTHORIZATION OR IN EXCESS OF AUTHORIZED ACCESS.

# COUNT I— COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

DEFENDANTS INTENTIONALLY ACCESSED PROTECTED SYSTEMS WITHOUT AUTHORIZATION AND CAUSED LOSS EXCEEDING $5,000.

THE REPORT DOESN'T JUST MEET THE THRESHOLD. IT OBLITERATES IT:
- TOTAL LOSSES: $1,287,450
- DATA EXFILTRATED:
    - PII (8,421 RECORDS)
    - FINANCIAL DOCS (1,287 PDFS)
    - TRADE SECRETS

MECHANISM (FROM THE REPORT)
- EVILGINX2 PHISHING (CREDENTIAL HARVESTING)
- TROJAN + COBALT STRIKE BEACON (PERSISTENCE)
- DATA EXFILTRATION VIA AWS + C2 SERVER

# COUNT II— WIRE FRAUD (18 U.S.C. § 1343)

DEFENDANTS ASHLEY MATYJAKOWSKI, NICK ABELE AND VITA SCHNEIDER USED INTERSTATE WIRES AND INTERNET COMMUNICATIONS TO EXECUTE A SCHEME TO DEFRAUD PLAINTIFF.

SUPPORTING FACTS
- FAKE LOGIN PORTALS MIMICKING GMAIL
- MALICIOUS PDFS LABELED "HR POLICY UPDATES"
- TRANSMISSION OF STOLEN CREDENTIALS AND FINANCIAL DATA

All of that crosses state and international lines.

Hacking through court systems, zoom style conference links, court reporter transcripts embedded with malicious intent, and phone calls to the court.

# Count III — Money Laundering (18 U.S.C. §§ 1956, 1957)

Upon information and belief Defendants Ashley Matyjakowski, Nick Abele and Vita Schneider conducted financial transactions designed to conceal proceeds of unlawful activity.

From Plaintiffs evidence:
- 23.5 BTC laundered (~$902,112)
- Use of:
  - Wasabi Wallet (mixing)
  - Binance (KYC-linked to Vita)
  - Structured withdrawals under $10K

And the kicker:

Time-delayed deposits and structured withdrawals show intent to conceal That's not accidental. That's strategy.

# Count IV— Trade Secret Misappropriation (DTSA, 18 U.S.C. § 1836)

# Count V — Trade Secret Misappropriation (DTSA, 18 U.S.C. § 1836)

All Defendants acquired and used proprietary business information through improper means.

Evidence:
- Theft of:
  - Client leads
  - Bid/tender documents
  - Internal strategy and financial data

Why this ties to Plaintiff's business interference They didn't just "hack for fun." They took competitive business intelligence.

That feeds directly into:
- Lost contracts
- Undercutting bids
- Market suppression

**PRAYER FOR RELIEF**
WHEREFORE, Plaintiff respectfully requests that this Court:
A. Injunctive Relief - 18 U.S.C. § 1030(g) and Fed. R. Civ. P. 65
1. Preliminary and permanent injunction enjoining Defendants Ashley Matyjakowski, Mark Matyjakowski, Nick Abele, Vita Schneider, Robert Moore, Ben

RONNENBERG, AND JOHN AND JANE DOES 1-50, AND THEIR OFFICERS, AGENTS, AND PERSONS ACTING IN CONCERT WITH THEM WHO RECEIVE ACTUAL NOTICE, FROM:

a) INTENTIONALLY ACCESSING PLAINTIFF'S PROTECTED COMPUTERS, ACCOUNTS, AND DEVICES AS DEFINED IN 18 U.S.C. § 1030(E)(2), INCLUDING FIGHTFORELIAS.COM, NYI585.COM, AND ACCOUNTS LISTED IN DD, WITHOUT AUTHORIZATION OR EXCEEDING AUTHORIZED ACCESS;

b) DEPLOYING, TRANSMITTING, OR CAUSING TO BE TRANSMITTED PHISHING LINKS, CREDENTIAL-HARVESTING PAGES, OR MALWARE AS DEFINED IN 18 U.S.C. § 1030(A)(5) TO PLAINTIFF'S PROTECTED COMPUTERS;

c) INTERFERING WITH PLAINTIFF'S BUSINESS COMMUNICATIONS AND LEAD GENERATION SYSTEMS THROUGH UNAUTHORIZED ACCESS;

2. ORDER DEFENDANTS TO PRESERVE ALL ELECTRONICALLY STORED INFORMATION, LOGS, COMMUNICATIONS, AND RECORDS RELEVANT TO PLAINTIFF'S CLAIMS FROM JANUARY 1, 2022 TO PRESENT.

B. DECLARATORY RELIEF - 28 U.S.C. § 2201

3. DECLARATORY JUDGMENT THAT DEFENDANTS' CONDUCT AS ALLEGED VIOLATES 18 U.S.C. § 1030(A)(2) AND (A)(5).

C. MONETARY RELIEF - 18 U.S.C. § 1030(G)

4. COMPENSATORY DAMAGES FOR LOSS AS DEFINED IN 18 U.S.C. § 1030(E)(11), INCLUDING COSTS OF INVESTIGATION, REMEDIATION, BUSINESS INTERRUPTION, AND LOST REVENUE, IN AN AMOUNT TO BE PROVEN AT TRIAL, PRESENTLY ESTIMATED AT $10,000,000, SUBJECT TO AMENDMENT UNDER FED. R. CIV. P. 15.

5. EQUITABLE RELIEF AND ATTORNEY'S FEES AND COSTS AS PERMITTED UNDER 18 U.S.C. § 1030(G).

D. DISCOVERY RELIEF

6. LEAVE TO CONDUCT LIMITED EXPEDITED DISCOVERY UNDER FED. R. CIV. P. 26(D)(1) AND RULE 45 SUBPOENAS FOR PLAINTIFF'S OWN ACCOUNT LOGS AND PRESERVATION FROM THIRD PARTIES, INCLUDING GODADDY, GOOGLE, APPLE, AND REGISTRARS FOR INTEGRITYINSULATION.COM AND OTHERS, AS DESCRIBED IN FACTUAL ALLEGATIONS.

E. OTHER RELIEF

7. SUCH OTHER AND FURTHER RELIEF AS THIS COURT DEEMS JUST AND PROPER, INCLUDING REFERRAL TO THE UNITED STATES ATTORNEY'S OFFICE FOR CONSIDERATION UNDER 18 U.S.C. § 1030 IF THE COURT FINDS EVIDENCE OF CRIMINAL VIOLATION.

JURY TRIAL DEMANDED

S/WILLIAM C HALEY JR

**WILLIAM C HALEY JR**
PROSE
20 BLUEBERRY CRESCENT ROCHESTER NY 14623 585-685-9995
PROUD FATHER OF EH

ROMANS 8:31